### IN THE MATTER OF
### ROBERT P. WEISHOFF, RESPONDENT.

Argued December 13, 1977—Decided February 1, 1978.

*Mr. Thomas J. McCormick* argued the cause for the Burlington County Ethics Committee.

*Mr. Morris W. Pinsky* argued the cause for respondent (*Messrs. Toll and Pinsky*, attorneys).

PER CURIAM. The present disciplinary proceeding against respondent, a member of the Bar of this State, admitted in 1966, grows out of the part he played as municipal prosecutor in the disposition of a speeding-traffic ticket in the Municipal Court of the Township of Evesham.

The matter first came to the attention of this Court as the result of a letter written to the Administrative Office of the Courts by the police officer who had issued the ticket. After an investigation, proceedings involving the municipal court judge were had before the Advisory Committee on Judicial Conduct, *R.* 2:15-1 *et seq.*, followed by a complaint for removal under *N. J. S. A.* 2A:1B-1 *et seq.* Ultimately, the municipal court judge, by order of this Court, was removed from judicial office for misconduct in his disposition of the traffic ticket in question. See *In re Hardt,* 72 *N. J.* 160 (1977). Our opinion also disciplined him as a member of the bar for the same misconduct by imposing a reprimand.

A complaint was then filed with the Burlington County Ethics Committee (Committee) charging respondent, the municipal prosecutor who attended to the disposition of the ticket in court, with misconduct in the part he played in such disposition. Lengthy hearings were held before the Committee which summarized the more pertinent evidence presented in support of the charge against respondent as follows:

On Wednesday, November 20, 1974 at approximately 3 p.m., the municipal court session in the Evesham Twp. Municipal Court which began at 9 a.m. was drawing to a close. Present in the large hearing room were four people: Judge Frederick Hardt, the municipal judge, Prosecutor Robert Weishoff, the township prosecutor, Mrs. Anna M. Ferry, the municipal court clerk, and Mrs. Joyce Harper, the deputy clerk. Seated at the long table in the front of the room was Mrs. Ferry and Judge Hardt at one end — the left side as one faces the table — and at the opposite end Mrs. Harper, who was responsible for handling the recording device in the court. Seated at a separate smaller table in front of the larger one and facing Judge Hardt was

Mr. Weishoff. Both Judge Hardt and Mr. Weishoff each had micro-phones in front of them connected to the recording machine.

The last matter involving the physical appearance of a defendant had been heard and that defendant had left the room. Judge Hardt was conferring with Mrs. Ferry about paperwork concerning the matter. As they were doing this, Mr. Weishoff beckoned to Mrs. Harper to step down from her spot at the recording device and come to where he was standing near his microphone. She hesitatingly complied, not knowing what he wanted. As, or after, she approached him, Mr. Weishoff announced the case of "Muriel J. Mansmann." Judge Hardt, interrupted in his conversation with Mrs. Ferry, repeated the name and then looked up to see Mr. Weishoff and Mrs. Harper standing at the microphone. The tape recording indicates a change in the inflection of Judge Hardt's voice, almost as though he were addressing a child, when he states "Ms. Mansmann," and then proceeds more deliberately "I have a summons that alleges a violation of the provisions of 39:4–98–c. How do you plead to the charge?" At this point Mr. Weishoff instructed Mrs. Harper to answer "Not guilty," and she complied. Mr. Weishoff continued with the following statement, "Your Honor, may it please the Court, in this particular matter the officer is not available. There has been a prior notice of a not guilty plea and I would, therefore, be forced at this time to, I guess, not put in any evidence and let the Court [dismiss the charge]." The bracketed phrase is disputed, but a close listening of the tapes indicates that it was said. In any event, the language used would certainly indicate a request for dismissal even though the exact words were not used. Judge Hardt broke in there-after, stating, "You're requesting a continuance which I will deny. As to being an inability on the part of the State to move, I will direct that a verdict of not guilty be entered." Mr. Weishoff con-cluded with a "Thank you" to the Court.

The summons which was the subject of this unusual dismissal was issued to Ms. Muriel J. Mansmann of 437 48th St., Pennsauken, shortly after midnight on October 10, 1974 by Evesham Twp. Pltm. John B. Haines, Jr. The summons alleged that Ms. Mansmann was doing 64 mph in a 50 mph zone. The original return date of the summons was November 6, 1974, but Ms. Mansmann obtained a con-tinuance by telephoning the municipal court clerk's office on that date and requesting a delay because of a scheduled hospitalization. The municipal court clerk's office routinely continued the matter until December 18, 1974. A letter dated November 7, 1974 to the municipal court clerk from the law firm of Maressa, Shoemaker and Borbe confirmed this continuance as well as that firm's representation of Ms. Mansmann. Ms. Mansmann was employed by the firm and had been employed as a legal secretary by Senator Joseph Maressa for 17 years. A subsequent letter dated November 15, 1974 from the law firm to the municipal court clerk advised that they had with-drawn their representation of Ms. Mansmann on the speeding ticket.

This letter was signed by Senator Maressa whereas Ms. Mansmann had signed the November 7th letter using his signature. In later testimony Ms. Mansmann indicated she was convalescing and away from her work on November 15th. She maintained she was unaware until later when contacted by the Burlington County Prosecutor's Office that her firm had withdrawn representation of her case. She just thought the matter had been misplaced by the Court and she wasn't anxious to bring to it the Court's attention. She admitted she had six to eight "points" at the time she received the ticket.

Sometime between November 6th and November 20th Chief Joseph Leedom of the Evesham Twp. Police Department appeared in the municipal court clerk's office with the hardback copy of Ms. Mansmann's summons. This is the copy which is given to the motorist and which Ptlm. Haines had given to Ms. Mansmann when he issued her the summons. Ms. Mansmann incidentally acknowledged that she knew Chief Leedom's wife and that Senator Maressa's firm had represented Mrs. Leedom in the sale of a Berlin bar and its liquor license. However, Ms. Mansmann denied she had contacted the Chief or anyone else to dispose of the ticket in an unlawful manner. She also maintained that she had never given anyone her hardback copy of the summons, but that it had remained in a personal file she kept at the law firm. The file had remained in the office while she was out in November, 1974 recuperating from her operation.

The municipal court clerk, Mrs. Ferry, and her deputy, Mrs. Harper, are quite definite in their recollection that sometime between November 6th and November 20th Chief Leedom came to their office with the hardback copy of Ms. Mansmann's summons. He handed it to Mrs. Ferry and asked that the case be put on the court list for the 20th. A short time later on the same day he returned and asked the hardback copy be returned to him. This was done. Mrs. Ferry said she realized this was unusual but thought that Ms. Mansmann had recovered sooner than expected and that the case was simply going to be heard sooner. Mrs. Harper recalled that Chief Leedom explained that Ms. Mansmann was his cousin and that she had contacted him about the ticket. Mrs. Harper said that when he returned to get the hardback copy he advised them that the Maressa firm was not going to represent Ms. Mansmann. This was before the clerk's office received the November 15th letter from the firm advising of the withdrawal of representation.

The above details were initially brought to light by Ptlm. Haines who began making inquiries in late January, 1975 as to why the case was not scheduled for a hearing. He had observed the court docket of November 20, 1974 scheduling the case posted on a bulletin board in its usual place in Police Headquarters, but he stated that when he saw the list his name and that of Ms. Mansmann had been marked off with a black felt pen. When he inquired at that time who marked it off, Lt. Daniel Kernan advised him, "Yesterday I saw the Chief cross them off, so I assume that the ticket has either

been paid or that the court date has been postponed." When Lt. Walt Wilson of the Prosecutor's Office interviewed Kernan about this statement on March 13, 1975, Kernan replied that he did not remember the incident but it is quite possible he made the statement to Ptlm. Haines. He further described officer Haines as a good officer, level headed and reliable, and if that is what Haines recalled, "its true."

Respondent's explanation for his courtroom conduct in having the deputy clerk impersonate Muriel J. Mansmann was that he was just clowning and he assumed the judge also realized that "we were fooling around." As to his calling the Mansmann case in the absence of either the defendant or the police officer, and his statement to the court as recorded on the tape, respondent's recollection is that he assumed he was presenting the court with the facts and letting the court decide what to do. However, when he was asked as to why, as prosecutor, he did not clarify the situation when the court acted as it did, his answer was that "I can't say that I was not requesting a continuance at that time" and that it was the judge's prerogative to deny the motion and dismiss the case.

As a result of the hearings, the Committee filed a presentment in which it found "as a fact all of the facts set forth in the summary." It characterized the entire incident as a ticket-fixing scheme engaged in by respondent, the chief of police and the municipal court judge. Specifically, it found respondent guilty of fraud and misrepresentation in violation of DR 1–102(A)(4), conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5) and intentionally violating established rules of procedure or of evidence in violation of DR. 7–106(C)(7).

One member of the Committee, while he concurred for the most part with the fact findings set forth in the presentment, filed a minority report. His view was that, insofar as respondent's involvement was concerned, the presentment put the incident in a more sinister light than warranted by the facts. He argued that respondent's conduct could not be

condoned, but suggested that it did not warrant punishment more severe than a reprimand, the same discipline imposed on the municipal court judge as a member of the bar.

Based on the proofs presented to the Committee, we are satisfied that respondent was a knowing party to the improper disposition of a traffic ticket. The explanation he offers is incredible. His conduct involved at least misrepresentation, in violation of DR 1–102(A)(4), and was prejudicial to the administration of justice, in violation of DR 1–102(A)(5).

We are likewise satisfied that respondent, in acting as he did, sought no personal profit for himself and merely thought he was doing a "favor." However, it calls to mind the comment of the late Chief Justice Weintraub in a case where a municipal judge was charged with involvement in the "killing" of traffic tickets. In *In re Mattera,* 34 *N. J.* 259, 275–276 (1961) the Chief Justice said this:

Justice is the right of all men and the private property of none. The judge holds this common right in trust, to administer it with an even hand in accordance with law. A judge who does "favors" with his office is morally an embezzler. He is also a fool, for a judge who plays a "good" fellow for even a few must inevitably be stained with the reputation of a man who can be reached.

The same applies with equal force to a municipal prosecutor.

We come to the question of the extent of discipline to be imposed. Respondent states that as a result of the foregoing he has resigned as municipal prosecutor. He argues that at most, he is subject to a reprimand, the same discipline visited on the municipal judge as a member of the bar. However, in imposing only a reprimand, we were mindful that the person involved had suffered the ignominy of being removed from his judgship for misconduct in office and that by virtue of such removal he may not hereafter hold judicial office. *N. J. S. A.* 2A:1B–8.

As the minority report herein states, respondent's conduct cannot be condoned. The improper disposition of a traffic

ticket undermines the judicial process. Participation in such disposition by the municipal prosecutor makes it that much more grievous. Respondent is to stand suspended from the practice of law for a period of one year and until the further order of this Court. So ordered.

*For suspension for one year*—Chief Justices HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*Opposed*—None.

## ORDER

It is ORDERED that ROBERT P. WEISHOFF of Mt. Holly be suspended from the practice of law for one year and until further order of the Court, effective February 15, 1978; and it is further

ORDERED that ROBERT P. WEISHOFF be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Supreme Court Governing Disbarred, Resigned and Suspended Attorneys.