IN THE MATTER OF S. VICTOR DE LUCIA,
AN ATTORNEY AT LAW.

IN THE MATTER OF JACK J. TERKOWITZ,
AN ATTORNEY AT LAW.

Argued January 10, 1978—Decided May 26, 1978.

*Mr. James Youngelson* argued the cause for the Morris County Ethics Committee.

*Mr. Edward N. Fitzpatrick* argued the cause for respondent DeLucia (*Messrs. Clapp and Eisenberg,* attorneys).

*Mr. Charles Rodgers* argued the cause for respondent Terkowitz (*Messrs. Breslin and Breslin,* attorneys).

PER CURIAM. A complaint filed with the Morris County Ethics Committee alleged ethical violations arising out of

the same episode against respondents S. Victor DeLucia, then a recently resigned Judge of the Municipal Court of Rutherford, and Jack J. Terkowitz, a member of the bar of this State and a former Judge of the same municipal court. However, because respondent Terkowitz was ill, hearings proceeded in November 1975 against respondent DeLucia alone. Hearings with respect to respondent Terkowitz were not held until December 1976. The Morris County Ethics Committee returned separate presentments against each respondent. Thereupon we issued orders to show cause why each should not be disbarred or otherwise disciplined and heard both oral arguments on both orders on the same return day.

Under these circumstances we have considered and reviewed each record, including the testimony and exhibits, independently.

## I. S. Victor DeLucia

Upon our examination of this record we have concluded that Terkowitz's sworn statement (he was ill and unable to appear), offered with the consent of respondent DeLucia, was improperly rejected by the Committee, and we have considered it as part of the record. Our recitation of the facts, most of which are undisputed, which we find clearly and convincingly demonstrated in the record, follows.

Respondent DeLucia had been the municipal magistrate of the Borough of Rutherford for approximately four-and-a-half years when the incident which occasioned these disciplinary proceedings occurred. On October 31, 1973 Robert Alvarez, a Rutherford police officer, issued a summons to Barbara Spencer for passing a school bus in violation of *N. J. S. A.* 39:4–128.1. The summons was returnable on November 12, 1973.

Mrs. Spencer, after receiving the summons, drove to her job at the law offices of Jack J. Terkowitz, where she was employed as a secretary. Upon arrival at the office Mrs. Spencer, who was under some tension and physical difficulties

due to her pregnancy, explained her plight to Terkowitz. She claimed that she had not seen the bus because of other traffic. Terkowitz, who had been the municipal court judge in Rutherford for many years and who knew respondent, telephoned respondent and explained Mrs. Spencer's physical problems. He also stated that Mrs. Spencer's view had been obstructed so that she had not seen the school bus before passing it.

Respondent then spoke to Officer Alvarez and, after explaining the circumstances, asked, "Would you have any objections if we took care of it?" or words to that effect. The officer answered that he did not care and that it was up to respondent. On November 12, 1973, while in chambers and without appearance by anyone before him, respondent personally noted a not guilty plea on the court copy of the summons and entered a judgment of not guilty. In that portion of the summons relating to witnesses' testimony, respondent wrote "testimony that * * * defendant states view was obstructed by trees * * *." In fact, no court hearing was ever held and no testimony was taken. The acquittal was based solely on information received from respondent Terkowitz. On November 13, respondent DeLucia advised Mrs. Spencer that the charge had been dismissed.

Shortly after November 13, 1973, a member of the Bergen County Prosecutor's Office visited the office of the Clerk of the Rutherford Municipal Court and examined the Spencer summons. When that occurred the clerk immediately telephoned and alerted respondent. Upon learning of the Prosecutor's investigation, respondent visited Terkowitz at the latter's office. He was visibly upset and concerned. Respondent requested that Mrs. Spencer prepare an affidavit in which she would recite what occurred at the time of the motor vehicle violation.

It was his denial at the hearing before the Ethics Committee that he had requested the affidavit be backdated to a date before the return day of the summons which led to the request to amend his answer to the complaint. In his answer

respondent admitted that he told Terkowitz that he needed an affidavit for his file setting forth the circumstances surrounding Mrs. Spencer's receipt of the summons for passing the school bus, as well as her physical condition at the time. He wanted the affidavit dated as of the day when Mrs. Spencer gave the information to Terkowitz. Although respondent was permitted to amend his answer to deny that he requested the affidavit be backdated, and standing alone the effect of the admission in the answer may not have risen to the level of establishing clear and convincing proof, we are convinced from other evidence that he did. See *Bauman v. Royal Indemnity Co.*, 36 *N. J.* 12 (1961).

On December 11, 1973 respondent was interrogated under oath by an Assistant Prosecutor of Bergen County. In that interrogation he stated that he had advised Mrs. Spencer to make out an affidavit and to date it the day on which she had relayed the information to Terkowitz. A relevant part of the statement reads as follows:

Q. At that time did you advise Mrs. Spencer to make out a sworn affidavit?
A. Yes, I did.
Q. What date was she told to put on this affidavit?
A. The date that she had told Mr. Terkowitz the information upon which I was relying.
* * * * * * * *
Q. Was the subject matter of the affidavit discussed with Mrs. Spencer and Mr. Terkowitz?
A. Did I discuss it with him?
Q. Yes.
A. No. I listened while the affidavit was put together. But I listened only.
Q. Did you advise her what to put in the affidavit?
A. No, sir.
Q. Did you advise her of the date to put on the affidavit?
A. The date that she had told him, whatever date that was. It could have been the 31st, the 10th, or any date in between.

On October 11, 1974 respondent testified under oath before the Supreme Court Advisory Committee on Judicial Conduct as follows:

JUSTICE FRANCIS: And you went to Mr. Turcowitz's [sic] office?

JUDGE DELUCIA: Yes, sir I did.

JUSTICE FRANCIS: And did you ask him for an affidavit at that time?

JUDGE DELUCIA: Yes, sir I did.

JUSTICE FRANCIS: And you wanted the affidavit from whom?

JUDGE DELUCIA: I wanted the affidavit from his secretary embodying the information which he had given me by telephone.

JUSTICE FRANCIS: And did you help dictate the affidavit?

JUDGE DELUCIA: I was there while he dictated it to his secretary and I listened.

* * * * * * * *

JUSTICE FRANCIS: Didn't you ask that the affidavit be dated February 6th?

JUDGE DELUCIA: I asked that the affidavit be dated as of the day the young lady gave Mr. Turcowitz [sic] the information which he relayed to me.

JUSTICE FRANCIS: Pardon me, I said February 6th, I meant November 6th.

JUDGE DELUCIA: Yes, sir.

JUSTICE FRANCIS: Did you take the affidavit?

JUDGE DELUCIA: No, sir I didn't.

JUSTICE FRANCIS: Were you there when Mr. Turcowitz [sic] took it?

JUDGE DELUCIA: Yes, sir.

JUSTICE FRANCIS: So that you knew that the affidavit was sworn to as of the 6th of November and of course you knew that was a false statement with respect to the taking of the oath.

JUDGE DELUCIA: Yes, sir.

* * * * * * * *

JUSTICE FRANCIS: And it was your intention to have that affidavit to point to as the reason for your judgment of acquittal?

JUDGE DELUCIA: Leaving aside for the moment if I may, the error that one may make in haste, what I wanted to accomplish simply was to have a written memorial of the fact that at least someone had in fact spoken to me. I realize the mistake that I had made and I wanted to simply have some written evidence that someone had called me before time.

JUSTICE FRANCIS: Well if that was all you wanted why did you ask that the affidavit be dated November 6th?

JUDGE DELUCIA: Haste, what I should have asked was that there be included in the affidavit a statement as to when the material had been supplied, that would have been the correct thing to do, I did not do that.

JUSTICE FRANCIS: So that you knew that when the affidavit was received in your court and filed that you were arranging for the filing of a false document. Did you not?

JUDGE DELUCIA: Yes, sir.

Respondent Terkowitz, when interrogated under oath on December 3, 1973 at the Bergen County Prosecutor's Office, swore:

Q. Do you recall the actual date when she made the affidavit?

A. No, I don't recall the actual date she made the affidavit. I recall he [DeLucia] wanted it dated the 6th. I think it was a couple of days after that I'm not sure.

Mrs. Spencer testified that when respondent came to Terkowitz's office on November 27, 1973, she was called into the office. Both were present when she was instructed to draw up the affidavit. She was then told to predate the affidavit and her recollection was that respondent DeLucia was still present.

As a result of the conversation at the meeting in Terkowitz's office, Mrs. Spencer prepared an affidavit in which she narrated her recollection of the events and circumstances surrounding her receipt of the summons for the traffic violation. Though she actually swore to the document and executed it around November 27, the acknowledgment on the jurat, which had been backdated to November 6, 1973, was taken by respondent Terkowitz.

The affidavit was delivered the next day to the Municipal Court Clerk who in turn gave it to respondent. Fully aware of the falsity of the acknowledgment, he directed, after consultation with his law partner, that it be filed by the clerk with the summons.

 Subsequent to the proceedings before this Court's Advisory Committee on Conduct and the submission of its Presentment and Recommendation for Institution of Formal Proceedings, respondent resigned as a municipal court judge. That resignation, however, does not preclude us from exer-

cising our disciplinary authority over the respondent. See *In re Vassar,* 75 *N. J.* 357 (1978); *In re Spitalnick,* 63 *N. J.* 429 (1973); *In re Maltera,* 34 *N. J.* 259, 265 (1961). A basic premise of our judicial system is that those who serve in a judicial capacity will scrupulously adhere to the *Disciplinary Rules of the Code of Professional Responsibility,* and we shall not sanction or ignore deliberate and intentional breaches of these criteria.

Respondent's guilt of misconduct in office is clear. We have on several occasions denounced ticket fixing, *In re Weishoff,* 75 *N. J.* 326 (1978); *In re Hardt,* 72 *N. J.* 160 (1977); *In re Spitalnick,* 63 *N. J. at* 432 (1973), with its ramifications of false records, false reports, favoritism, violation of court rules, and cover-up, all of which exist in this case. See *R.* 7:6–2. Such conduct compromises the integrity of the judicial process and violates the fundamental principles of impartial justice.

█ Having resigned, respondent is no longer subject to being disciplined as a judge, and is before us only in his capacity as a member of the bar. *In re Vassar, supra,* at 363.[1] Respondent contends that he did not personally profit, that he has resigned and has suffered great mental anguish. All this is undoubtedly true. But there come to mind the salient comments of the late Chief Justice to which we recently adverted in *In re Weishoff, supra:*

A judge who does "favors" with his office is morally an embezzler. He is also a fool, for a judge who plays a "good" fellow for even a few must inevitably be stained with the reputation of a man who can be reached. [75 *N. J.* at 331, quoting from *In re Mattera, supra,* at 275–276 (1961)]

Respondent has violated *DR* 1–102(A)(3), (4), (5) and (6). He is suspended from the practice of law for a period

---

[1] We note that removal of a judge results in the disability that he "shall not thereafter hold judicial office." *N. J. S. A.* 2A:1B–9.

of one year, and until the further order of this Court. Respondent's petition for restoration to practice shall be processed in accordance with *R.* 1:20–3(g).

## II. Jack J. Terkowitz

The record in these proceedings was substantially the same as in the DeLucia proceedings, for the testimony taken before the Ethics Committee in the DeLucia proceedings was by stipulation incorporated in the record. In addition Mrs. Spencer and respondent testified.

Mrs. Spencer's testimony was substantially the same as before. She related that she received the summons on October 31, 1973; that she had not been well and did not want to appear in court; that she told respondent of the incident; that respondent spoke to Judge DeLucia; that she did not appear on November 12, 1973, the return day of the summons; that the next day Judge DeLucia phoned and advised her that the summons had been dismissed; that when on November 27, 1973 Judge DeLucia came to respondent's office, she was asked to prepare an affidavit which Judge DeLucia wanted dated November 6, 1973; that she typed up the affidavit with that date in the jurat; that respondent took her acknowledgment; and that she delivered the affidavit to the clerk's office the next day.

Respondent, who had been the municipal judge in Rutherford for more than 13 years, testified that, when Mrs. Spencer mentioned that she had received the summons and did not want to appear, he telephoned Judge DeLucia and obtained an adjournment and permission to file an affidavit in lieu of her appearance. Respondent asserted that Judge DeLucia came to his office on November 27, that the Judge was upset and sought Mrs. Spencer's affidavit as soon as possible. Respondent repeatedly said Judge DeLucia wanted the affidavit to be dated "the day that she gave me the story." Respondent admitted that Mrs. Spencer prepared the affidavit as of November 6 and that he had taken the false jurat.

We are convinced from our independent examination of this record that the same factual findings made in the De-Lucia matter are fully warranted here. We also find that respondent, who had been the municipal judge in Rutherford for many years, was fully aware of the rules applicable to proceedings before that court and that he knowingly participated in the improper dismissal of the traffic summons. Furthermore, he attempted to cover up the wrongdoing not only by permitting the affidavit to be prepared with a back-dated acknowledgment, but also by executing a false jurat.

The contention that the statement contained in the suppositious affidavit is true does not minimize the effect of the falsity. Courts act on the basis of affidavits and the solemnity of the oath is a substantial factor in assuring the verity of the materials therein. In the absence of an appropriate oath deponents may not be subject to charges of perjury or false swearing. Further, respondent impliedly consented to its being filed with the court records. Imposing this false paper upon the court, participating in the suppression of the summons and in the attempted cover-up are acts "from which sensitive and conscientious" members of the bar "would have recoiled." *In re Briedl*, 84 *N. J. Eq.* 222, 227 (Ch. 1915). See *R.* 7:6–2 which states that "[t]he aid by any person in the disposition of a traffic ticket or summons in any manner other than that authorized by the court may constitute a contempt."

█ Respondent violated *DR* 1–102(A) (3), (4), (5) and (6). He is suspended from the practice of law for a period of one year, and until the further order of this Court. His petition for restoration to practice shall be processed in accordance with *R.* 1:20–3(g).

*For suspension of both respondents for one year*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*Opposed*—None.

## ORDER

It is ORDERED that S. VICTOR DE LUCIA of Rutherford be suspended from the practice of law for one year and until further order of the Court, effective June 12, 1978; and it is further

ORDERED that S. VICTOR DE LUCIA be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Supreme Court governing suspended, disbarred and resigned attorneys.

## ORDER

It is ORDERED that JACK J. TERKOWITZ of Rutherford be suspended from the practice of law for one year and until further order of the Court, effective June 12, 1978; and it is further

ORDERED that JACK J. TERKOWITZ be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with all the regulations of the Supreme Court governing suspended, disbarred and resigned attorneys.