P. GARY STERN *v.* CONNECTICUT MEDICAL
EXAMINING BOARD ET AL.
(13272)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 9—decision released August 2, 1988

*Stuart D. Rosen,* with whom were *Leonard M. Bieringer* and, on the brief, *Steven M. Basche,* for the appellant (plaintiff).

*Paul J. Lahey,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, *Robert E. Walsh* and *Richard J. Lynch,* assistant attorneys general, and *Sheldon M. Kivell,* legal intern, for the appellees (defendants).

PETERS, C. J. The sole question in this case is whether an administrative agency has jurisdiction to revoke the license of a Connecticut physician even though the license expired by lapse of time prior to the initiation of revocation proceedings. The plaintiff, P. Gary Stern, M.D., appeals from the judgment of the trial court upholding the decision of the Connecticut medical examining board (board) revoking his license to practice medicine. We find error.

I

The facts of this case are not disputed. In late 1979 and early 1980, the plaintiff was the subject of several overlapping investigations into alleged professional misconduct. The department of consumer protection

pursued charges that the plaintiff had excessively pre-
scribed controlled substances and had failed to main-
tain proper records. As a result, the plaintiff surrendered
his Connecticut controlled substance registration. A
second inquiry was conducted at Mount Sinai Hospi-
tal to determine whether the plaintiff's affiliation with
that hospital should be terminated. This investigation
resulted in the plaintiff's forfeiture of staff privileges.
The Hartford County Medical Society began its own
investigation of the plaintiff's fitness to practice medi-
cine. Finally, the department of health services (depart-
ment), acting on a complaint, launched an investigation.
It is from the department's investigation that the
charges in this case originated.

Since 1980, the plaintiff has ceased to be licensed to
practice medicine in this state. His license expired, by
its own terms, on January 31, 1980, and the plaintiff
did not apply for its renewal.[1] In April and May of 1980,
settlement negotiations took place between a depart-
ment agent and the plaintiff's attorney, in an effort to
fashion a consent decree to accompany revocation or
suspension of the plaintiff's license. These negotiations
proved to be unsuccessful. On July 22, 1980, the plain-
tiff, through his attorney, returned his license to the
board, explaining that he was voluntarily surrender-
ing any right to practice in Connecticut and that he was
no longer a resident of the state. He now resides in
Florida and has established a medical practice there.

In the summer of 1981, the board notified the plain-
tiff's attorney that the department, which acts as the
prosecuting authority in physician disciplinary cases,

[1] General Statutes (Rev. to 1983) § 19a-88 (b) provides that "[e]ach per-
son holding a license to practice medicine . . . shall, annually, during the
month of his birth, register with the department of health services . . . ."
Subsection (f) provides that the license of "[a]ny person who fails to com-
ply with the provisions of this section . . . shall become void" upon the
expiration of a ninety day renewal period.

had decided to issue a statement of charges against the plaintiff. In response by letter, the plaintiff's attorney questioned the authority of the board or the department to proceed against a physician who, by expiration or surrender, no longer held a valid license to practice in this state.

In November, 1983, the department filed a forty-four count statement of charges against the plaintiff. Two principal forms of misconduct were alleged. The plaintiff was first accused of excessively and improperly prescribing controlled substances and of failing to maintain proper records of dispensed controlled substances. In addition, the plaintiff was accused of sexual misconduct in having intercourse with, and taking nude photographs of, his female patients. In its prayer for relief, the department requested that the board "find for any or all of the above reasons, that P. Gary Stern is unable to practice medicine with reasonable skill and/or safety and that the Board *revoke the license* of P. Gary Stern to practice medicine." (Emphasis added.)

A notice of hearing was issued by the board in November, 1983. After receiving actual notice in Florida, the plaintiff hired new counsel in Hartford. His counsel promptly asked a department attorney for a continuance. The hearing nevertheless was held as scheduled on November 30, 1983. The plaintiff's new counsel appeared at the hearing without filing or renewing with the board any oral or written motion for a continuance. Instead, counsel filed a motion to dismiss on two grounds: (1) lack of jurisdiction; and (2) laches. The board reserved decision on the motion. The department then presented eight witnesses to prove its charges against the plaintiff. Each witness was vigorously cross-examined by plaintiff's counsel. The plaintiff did not appear or testify on his own behalf. At the close of the hearing, plaintiff's counsel did not move for a continuance and did not indicate any interest in calling any

defense witnesses. The hearing was adjourned without objection.

The board found all of the charges proven, except for eight counts involving two female patients who did not testify. The board also denied the plaintiff's motion to dismiss for lack of jurisdiction, concluding that the surrender of his license had been done with intent to evade disciplinary action and therefore was not binding on the board.[2] The board did not consider the effect, if any, on its jurisdiction of the expiration of the plaintiff's license for lapse of time. The defense of laches was denied because, in the board's judgment, the plaintiff had not been prejudiced by the department's delay in filing charges.

In his administrative appeal to the Superior Court, the plaintiff did not contest the board's findings of misconduct. He instead reiterated his claim that the board lacked jurisdiction to revoke a medical license that, by automatic expiration or voluntary surrender, had

[2] Because we conclude that the license expired by operation of law, we need not consider what effect, if any, the surrender of the license might have had on the jurisdiction of the board. We note, however, that the power of a physician unilaterally to surrender a medical license is an unsettled point of law. The plaintiff argues that *Gavlas* v. *State Department of Health*, 108 Conn. 86, 142 A.2d 388 (1928), held that the surrender of a license to an appropriate agency is tantamount to a revocation and therefore divests the board of jurisdiction in this case. As the defendant correctly notes, however, *Gavlas* did not involve the problem of a surrender in the face of imminent disciplinary charges. Courts in other jurisdictions have held, under varying circumstances, that licensees are not entitled to surrender their licenses as of right, during the pendency of disciplinary proceedings, in order to thwart agency jurisdiction. See, e.g., *Boedy* v. *Department of Professional Regulation*, 433 So. 2d 544 (Fla. App. 1983); *Cross* v. *Colorado State Board of Dental Examiners*, 37 Colo. App. 504, 508, 552 P.2d 38 (1976); *Cal Pacific Collections, Inc.* v. *Powers*, 70 Cal. 2d 135, 139–40, 449 P.2d 225, 74 Cal. Rptr. 289 (1969). In addition, it may be significant that no statute in Connecticut expressly permits or prevents a physician from surrendering his or her license. This lack of statutory direction is quite evident in light of the specific provision terminating a physician's license, by operation of law, if a timely renewal is not sought. See footnote 1, supra.

ceased to exist prior to the filing of charges. He further claimed that the board's action was barred by laches and that the board had denied him due process of law by virtue of inadequately short notice of the hearing date. The trial court denied the appeal on all three grounds.

On appeal to this court, the plaintiff renews the jurisdictional and due process claims that the trial court rejected. We conclude that, under the facts and circumstances of this case, the board lacked jurisdiction to revoke the plaintiff's license. Accordingly, we do not address his alternative claim of a due process violation.

## II

The plaintiff's jurisdictional claim arises from a juxtaposition of two related statutes involving the board's disciplinary authority. General Statutes (Rev. to 1983) § 20-13c provides that "[t]he board is authorized to restrict, suspend or revoke the license . . . of a physician in accordance with section 19a-17, when the board finds that such physician is unable to practice medicine with reasonable skill or safety . . . ." The term "physician" is defined in General Statutes (Rev. to 1983) § 20-13a (5) as "a person licensed pursuant to [chapter 370] . . . ." Having allowed his license to expire prior to the filing of disciplinary charges in this case, the plaintiff maintains that he was not a "physician" within the scope of the board's disciplinary jurisdiction. The board, on the other hand, argues that, for jurisdiction to attach, the practitioner need only commit acts of alleged misconduct during his or her licensure. It is not necessary, according to the board, that the practitioner hold a license when actual charges are filed. In its view, the plaintiff's position would eviscerate the regulatory power of the board in contravention of legislative intent.

Our task is to determine whether the statutory jurisdiction of the board extends to the revocation of a license that expired by lapse of time prior to the commencement of formal proceedings. An administrative agency, as a tribunal of limited jurisdiction, must act strictly within its statutory authority. *Castro* v. *Viera,* 207 Conn. 420, 428, 541 A.2d 1216 (1988); *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 230, 278 A.2d 771 (1971). In exercising its disciplinary jurisdiction, the medical examining board "possesses no inherent power. Its authority is found in a legislative grant, beyond the terms and necessary implications of which it cannot lawfully function." *Adam* v. *Connecticut Medical Examining Board,* 137 Conn. 535, 537–38, 79 A.2d 350 (1951); General Statutes § 19a-10. Absent a grant of authority, any sanction meted out by the board is "necessarily void." *Newington* v. *Mazzoccoli,* 133 Conn. 146, 156, 48 A.2d 729 (1946). If the sanction was within the limits prescribed by law, however, it may be challenged only for an abuse of discretion in its imposition. *Paley* v. *Connecticut Medical Examining Board,* 142 Conn. 522, 529, 115 A.2d 448 (1955).

The board derives its authority from three principal statutes: §§ 19a-17, 20-8a and 20-13c. While none of these statutes expressly resolves the question that we confront in this case, all three confer authority upon the board to revoke licenses. Our first order of business, then, is to reconcile these interrelated provisions in order to achieve a sensible overall interpretation that is faithful to the intent of the legislature. *Obuchowski* v. *Dental Commission,* 149 Conn. 257, 266, 178 A.2d 537 (1962).

Subsection (a) (1) of General Statutes § 19a-17[3] gives the board the authority to "[r]evoke a *practitioner's*

[3] "[General Statutes (Rev. to 1983)]. Sec. 19a-17. (Formerly Sec. 19-4s). DISCIPLINARY ACTION BY DEPARTMENT, BOARDS AND COMMISSIONS. (a) Each

license." (Emphasis added.) The term "practitioner" is not defined by the statute. From the context of the statute, however, it is obvious that § 19a-17 is designed to be an omnibus charter of available disciplinary sanctions for many professional boards and commissions. It is therefore not surprising that § 19a-17 employs the general term "practitioner" to describe the class of persons subject to its terms. The terms of § 19a-17 define the outer limit of the disciplinary jurisdiction of boards and commissions within the department of health services. Whether separate provisions that govern specific professions narrow the scope of § 19a-17 must be determined on a case-by-case basis.

General Statutes § 20-8a[4] implements the general mandate of § 19a-17 for the profession of medicine and

board or commission established under chapters 369 to 375, inclusive, 378 to 381, inclusive, and 383 to 388, inclusive, and the department of health services with respect to professions under its jurisdiction which have no board or commission may take any of the following actions, singly or in combination, upon finding the existence of good cause:

"(1) Revoke a practitioner's license."

[4] "[General Statutes] Sec. 20-8a. CONNECTICUT MEDICAL EXAMINING BOARD. (a) There shall be within the department of health services a Connecticut medical examining board. Said board shall consist of nine members appointed by the governor, subject to the provisions of section 4-9a, as follows: Four physicians practicing in the state; one physician who shall be a full-time member of the faculty of The University of Connecticut School of Medicine; one physician who shall be a full-time chief of staff in a general-care hospital in the state; and three public members. No professional member of said board shall be an elected or appointed officer of a professional society or association relating to his profession at the time of his appointment or have been such an officer during the year immediately preceding such appointment or serve for more than two full consecutive terms which commence after July 1, 1980. Professional members shall be practitioners in good professional standing and residents of this state.

"(b) All vacancies shall be filled by the governor for the remainder of the term vacated. Successors and appointments to fill a vacancy shall fulfill the same qualifications as the member succeeded or replaced.

"(c) The office of the board shall be in Hartford, in facilities to be provided by the department.

"(d) The board shall adopt and may amend a seal.

"(e) The governor shall appoint a chairperson from among such members. Said board shall meet at least once during each calendar quarter and

surgery. Subsection (e) of § 20-8a provides that the "board shall (1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints against practitioners and (3) impose sanctions where appropriate." Rather than conferring new powers or limiting ones already conferred, § 20-8a creates an administrative agency for the supervision of physicians and vests that agency with authority to impose the disciplinary actions set forth in § 19a-17.

Finally, General Statutes § 20-13c[5] authorizes the board to "restrict, suspend or revoke the license . . . of a physician" for any of seven specified reasons. This section was enacted in 1976 as part of an overhaul of the licensure regulation of Connecticut physicians.

---

at such other times as the chairman deems necessary. Special meetings shall be held on the request of a majority of the board after notice in accordance with the provisions of section 1-21. Members shall not be compensated for their services but shall be reimbursed for necessary expenses incurred in the performance of their duties. Any member who fails to attend three consecutive meetings or who fails to attend fifty percent of all meetings held during any calendar year shall be deemed to have resigned from office. Minutes of all meetings shall be recorded by the board. No member shall participate in the affairs of the board during the pendency of any disciplinary proceedings by the board against such member. Said board shall (1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints against practitioners and (3) impose sanctions where appropriate."

[5] "[General Statutes] Sec. 20-13c. RESTRICTION, SUSPENSION OR REVOCATION OF PHYSICIAN'S RIGHT TO PRACTICE. GROUNDS. The board is authorized to restrict, suspend or revoke the license or limit the right to practice of a physician in accordance with section 19a-17, when the board finds that such physician is unable to practice medicine with reasonable skill or safety for any of the following reasons: (1) Physical illness or loss of motor skill, including but not limited to deterioration through the aging process; (2) emotional disorder or mental illness; (3) abuse or excessive use of drugs, including alcohol, narcotics or chemicals; (4) illegal, incompetent or negligent conduct in the practice of medicine; (5) possession, use, prescription for use, or distribution of controlled substances or legend drugs, except for therapeutic or other medically proper purposes; (6) misrepresentation or concealment of a material fact in the obtaining or reinstatement of a license to practice medicine; or (7) violation of any provision of this chapter or any regulation established hereunder."

Prior to 1976, physicians were subject to license regulation under General Statutes (Rev. to 1975) § 20-45, a general provision that applies to "any licensed or registered practitioner of the healing arts in this state." With the passage of Public Acts 1976, No. 76-276, however, the legislature established new rules for use in licensure proceedings exclusively against physicians. At the very least, the legislature's judgment that physicians are to be evaluated under a separate licensure regime causes us to pay particular heed to its detailed provisions. See *State* v. *Champagne,* 206 Conn. 421, 435–36, 538 A.2d 193 (1988).

In light of this statutory scheme, we conclude that the board had no jurisdiction to revoke the plaintiff's license in this case. Central to our conclusion is the narrow scope of the department's prayer for relief, which requested only the revocation of the plaintiff's license.

In an ordinary civil case, the general rule is that a prayer for relief must articulate with specificity the form of relief that is sought. *Francis T. Zappone Co.* v. *Mark,* 197 Conn. 264, 269–70, 497 A.2d 32 (1985); *Leone* v. *Knighton,* 196 Conn. 494, 497–98, 493 A.2d 887 (1985); *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 655, 353 A.2d 714 (1974). A party who fails to comply with this rule runs the risk of being denied recovery.

In the administrative context, a proper claim for relief serves the equally vital function of establishing the jurisdictional authority of the tribunal. Unlike the general jurisdiction of the Superior Court; *Carten* v. *Carten,* 153 Conn. 603, 612, 219 A.2d 711 (1966); the jurisdiction of an administrative body is not to be presumed and must be established affirmatively by the notice of hearing and statement of charges in any given case. Just recently, we held that the existence of an employee-employer relationship is a jurisdictional fact

that must be shown in order to proceed with a claim for workers' compensation benefits. *Castro* v. *Viera,* supra, 427–35. Similarly, the death of a decedent is a jurisdictional prerequisite to the administration of an estate in probate proceedings. *Ruick* v. *Twarkins,* 171 Conn. 149, 153, 367 A.2d 1380 (1976). These cases stand for the principle that certain jurisdictional facts are essential to establish the statutory jurisdiction of tribunals of limited authority. The existence of these facts "is fundamental to the power to entertain and adjudicate a proceeding on the merits. In short, such facts condition the power to act." *Castro* v. *Viera,* supra, 434.

The critical jurisdictional fact in the present case was the licensure status of the plaintiff at the commencement of the proceedings. The authority of the board is contingent upon a showing that a respondent is a "physician" subject to its disciplinary power. General Statutes § 20-13c. According to § 20-13a (5), a "physician" is any "person licensed pursuant to [chapter 370]." In its statement of charges, the department did not specify any intention to pursue its options under § 19a-17 for a censure, letter of reprimand or civil penalty. Nor did the department include in its prayer for relief a general request for any administrative action that, in the board's discretion, might be appropriate in this case. Having committed itself to seeking only a license revocation, the department disabled itself from invoking other sanctions theoretically authorized by § 19a-17 as a basis for board jurisdiction. In short, we conclude that the narrowly drawn prayer for relief rendered the case subject to dismissal for lack of jurisdiction.

Our conclusion is analogous to the holdings of courts in other states that have dismissed complaints against judges who no longer hold office when formal proceedings are initiated. In *In re Fienberg,* 139 Vt. 511, 512,

430 A.2d 1282 (1981), a state judge was retired by operation of law shortly before formal disciplinary accusations about his judicial conduct were made. The Vermont Supreme Court dismissed the complaint for lack of jurisdiction. Facing a similar jurisdictional problem, the New Jersey Supreme Court concluded that the accused, having resigned from his judgeship, was before the court only in his capacity as a member of the bar, but not as a judge. *In re De Lucia*, 76 N.J. 329, 336, 387 A.2d 362 (1978). The court in *In re De Lucia* thus recognized that a judge, by virtue of his or her continuing status as a member of the bar, cannot evade disciplinary supervision in toto.

Arguably, the board in this case might have had similar continuing jurisdiction to levy a monetary fine on the plaintiff pursuant to § 19a-17, which authorizes the assessment of a civil penalty of up to $1000 on any "practitioner." The plaintiff, while no longer a "physician" within the meaning of § 20-13a (5), might still have been subject to nonlicensure sanctions applicable to a "practitioner." But see *Mangels* v. *Commissioner of Motor Vehicles*, 40 Conn. Sup. 226, 228–30, 487 A.2d 1121 (1984) (concluding that the commissioner of motor vehicles lacked jurisdiction to levy a fine against a former licensee even though the misconduct underlying the fine took place during the period of licensure). Given the limited form of relief sought in this case, however, we do not reach the merits of this question.

Our conclusion that the board lacked the power to revoke a physician's expired license does not strip the board of the powers it needs to protect the public from renegade medical practitioners. At the outset, we doubt that most physicians would consciously elect the forfeiture of their entire Connecticut practices merely to evade licensure overview in this state. More important, the board is authorized, by its own regulations, to deny

relicensure to a former licensee if "the candidate had been the subject of complaints, investigations or disciplinary actions as a licensed professional." Regs., Conn. State Agencies § 19a-14-2 (4). The board "must" take this factor into consideration before granting relicensure, according to this regulation. A further regulation provides that "[n]o license shall be issued if there is a complaint awaiting adjudication against the applicant . . . with the Department of Health Services until such a time as it is resolved in favor of the candidate." Regs., Conn. State Agencies § 19a-14-4. In addition, the department has "discretion" to deny relicensure if the candidate is deemed not to meet this standard. Regs., Conn. State Agencies § 19a-14-3.

To fulfill the mandate of these regulations, the department has broad authority to conduct whatever investigations may be necessary to gather and preserve evidence of misconduct for eventual use against a former licensee who applies for relicensure. General Statutes § 19a-14 (a) (11) empowers the department to "[c]onduct any necessary investigation and follow-up in connection with complaints regarding *persons subject to regulation or licensing* by the department." (Emphasis added.) In addition, § 19a-14 (a) (12) authorizes the department to "[p]erform any other function necessary to the effective operation of a board . . . and not specifically vested by statute in the board . . . ." Nothing in the language of these provisions limits the department's investigatory power to current license holders. To the contrary, § 19a-14 (a) (11) plainly applies to all "persons subject to regulation or licensing." A former licensee who retains the option of applying for relicensure continues to be "subject to" the regulatory authority of the department, particularly if complaints have been filed against him or her. These provisions confer sufficient regulatory authority upon the department and the board to enable them to carry

out their respective functions despite our conclusion in this case.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other justices concurred.