[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Thom Serrani, a former mayor of the city of Stamford, seeks in these actions[1] a declaratory judgment that the defendant, the Board of Ethics of the city of Stamford,[2]
did not have the legal right to determine that he had violated certain provisions of the "Stamford Municipal Code of Ethics" (Code of Ethics) in connection with the plaintiff's approval of waiving the requirement of competitive bidding for the purchase of certain equipment. The plaintiff applied to the Superior Court for a temporary injunction to enjoin the defendant from proceeding with its investigation of the plaintiff, since the plaintiff was no longer in office. The request for the injunction was denied. An appeal was taken by the plaintiff from this denial and the judgment rendered in favor of the defendant. In Serraniv. Board of Ethics, 225 Conn. 305, 309, 622 A.2d 1009 (1993), the Supreme Court ruled that the plaintiff had failed to adequately notify "all persons having an interest in the subject matter of the complaint" as required by Practice Book § 390(d). Thus, the judgment for the defendant was reversed and the case was remanded to this court so that reasonable notice could be sent to all interested parties. Subsequently, notice was sent both by publishing notice of the pendency of the action in the local newspaper and by posting a large number of notices thereof throughout municipal buildings in accordance with an order of notice issued by this court.[3]
According to the Supreme Court in Serrani, supra, 225 Conn. 306, the "substantive issue . . . is whether the expiration of a public employee's term of office divests a municipal board of ethics of the authority to continue an investigation into alleged official misconduct during the term of public employment." The Supreme Court declined to decide this issue, Id., 306. Therefore, the issue is presently before this court. In addition, another issue, which was not reviewed by the Supreme Court, has been presented by the plaintiff. It concerns the effect of certain rulings by the state Freedom of Information Commission (FOIC) concerning the conduct of the defendant Board in its investigation of the plaintiff.[4]
As to the first issue, the Supreme Court in Serrani v. Boardof Ethics, supra, 225 Conn. 307 n. 2, stated that the controversy concerned "[s]ection 15 of the Stamford Municipal Code of Ethics, Stamford Code of Ordinances No. 640 Sup. (1989), [which] provides: `JURISDICTION If an officer . . . under investigation leaves office . . . the Board by a majority vote shall have the power to continue the investigation.' On February 29, 1992, the CT Page 1323-WWW defendant voted, by the requisite majority, to continue investigation of the official conduct of the plaintiff after the expiration of his term as mayor."
The defendant city's right to enact an ordinance such as section 15 depends upon whether the state enabling legislation entitling a municipality to create a board of ethics permits such an amendment. Norwich v. Housing Authority, 216 Conn. 112, 123,579 A.2d 50 (1990). General Statutes § 7-148h provides that: "[A]ny . . . city . . . may . . . by ordinance, establish a board . . . to investigate allegations of unethical conduct, corrupting influence or illegal activities levied against any municipal official, officer or employee." This statute does not state whether such a board loses jurisdiction once the person under investigation is no longer a municipal officer or official.
Pursuant to this statutory authority, Stamford enacted Ordinance No. 445 Supplemental in 1981, creating a municipal board of ethics. This ordinance was subsequently replaced in 1989 by Ordinance 640 Supplemental, which did not change in any material way its predecessor, except to provide in a new section, section 15, as pointed out by the Supreme Court, that the board was authorized to continue an investigation of an official who no longer held office.
The captioned cases were tried to the court and the evidence disclosed that the plaintiff initiated its investigation of the conduct of the plaintiff, and several other municipal officers, in the spring of 1991, by holding public hearings, after previously determining that probable cause existed to hold such hearings. After four terms as mayor, or eight years in office, beginning in December, 1983, the plaintiff did not run for office again, and hence his fourth and last term expired on November 30, 1991. The Supreme Court noted that on February 29, 1992, the defendant, on the purported authority of section 15 of the Code of Ethics, voted to continue its investigation of the plaintiff.
On September 22, 1992, some ten months after the plaintiff left office, the defendant board determined that the plaintiff had violated the Code of Ethics by allegedly failing to comply with certain purchasing guidelines in connection with the purchase of an E911 emergency communication dispatch system. The claim was that plaintiff, while he was acting as the mayor, and at the request of the purchasing agent, unlawfully approved, in the absence of an emergency, waiver of the obligation of open CT Page 1323-XXX bidding for the purchase of such a system.[5] The defendant did not contend that the plaintiff personally profited from any of the alleged ethical violations involving bid waivers.[6] This decision was subsequently affirmed at a meeting held by the defendant board on July 28, 1994, which is the subject of the fifth count of the plaintiff's amended complaint of January 6, 1995.
The parties agree that there is no appellate decision in this state that is directly on point, but they both urge that Stern v.Medical Examining Board, 208 Conn. 492, 545 A.2d 1080 (1988), fortifies their respective positions. The issue in that case was whether the defendant Medical Examining Board "has jurisdiction to revoke the license of a Connecticut physician even though the license expired by lapse of time prior to the initiation of revocation proceedings." Id., 493. An obvious difference between the two cases is that in the instant case, the defendant initiated its investigation of the plaintiff while he was still in office, whereas in Stern the proceeding to revoke the plaintiff's medical license did not commence until after the license had already expired and the plaintiff was no longer a physician in this state. The key distinction, however, is the purpose or aim of the defendant's "prayer for relief" in Stern, which "requested only the revocation of the plaintiff's license." Id., 501. "[T]he narrowly drawn prayer for relief rendered the case subject to dismissal for lack of jurisdiction." Id., 502. The court pointed out that the defendant board retains its "investigatory powers" or could use its information in the event of an application for relicensure. The defendant Medical Examining Board's lack of jurisdiction resulted from the fact that the sole purpose of the board's actions was to revoke a nonexistent license.
In this case, however, the defendant Board of Ethics is not seeking, nor does it have the authority, to punish the plaintiff. Only the city's legislative body, the Board of Representatives, can impeach an elected official. Charter of the city of Stamford, § 8, C2-90-1. If the purpose of the defendant's investigation had been narrowed to whether or not to recommend impeachment to the Board of Representatives, the action would be subject to dismissal as there is no one in office to impeach. The defendant's broader purpose was to investigate a complaint of official misconduct and to issue a report with the results. TheStern case leads to the conclusion that because the purpose of the defendant's investigation was not to seek the removal of an CT Page 1323-YYY officeholder who no longer held office, the plaintiff's request for a declaratory judgment that the defendant lacked jurisdiction is denied.[7] Such a limited purpose, furthermore, fits within the mandate provided in General Statutes § 7-148h, and therefore enactment of Ordinance 640 Supplemental was within the statutory authority of the city of Stamford.
The next counts of the complaint involve certain rulings by the FOIC. After conducting a number of public hearings, the defendant met on February 29, 1992, and voted to continue its investigation of the plaintiff even though he was no longer in office. The plaintiff filed a complaint with the FOIC on the ground that he had not been properly advised of the subject matter of that meeting. On November 12, 1992, the FOIC ruled in favor of the plaintiff and determined that the defendant's meeting of February 29, 1992, was illegal, and that the defendant's rulings at that meeting were null and void.[8] See, e.g. General Statutes § 1-21i ("Any person denied the right . . . to attend any meeting of a public agency or denied any other right conferred by sections. . . . 1-21 [requiring public meetings. and notice thereof] . . . may appeal therefrom to the Freedom of Information Commission. . . . (2) The commission may declare null and void any action taken at any meeting which a person was denied the right to attend. "); Glastonbury EducationAssociation v. Freedom, of Information Commission, 234 Conn. 704,712, 663 A.2d 349 (1995) ("The overarching legislative policy of the FOIA is one that favors `the open conduct of government and free public access to government records.'").
The defendant board continued to conduct hearings on the E-911 controversy, and at a session on September 22, 1992, the defendant ruled that the plaintiff had violated the Code of Ethics by his approving the request to waive the requirement of open bidding for the E911 equipment. The plaintiff appealed to the FOIC which, on July 14, 1993, decided that the meeting of September 22, 1992 was illegal because the plaintiff had not been given the opportunity to request that the meeting be open to the public. Thus, the vote against the plaintiff at the September 22, 1992 meeting was declared null and void. At this point, the plaintiff still had not been legally or properly found to have committed any violations of the Code of Ethics because the defendant's attempt to do so had been declared invalid by the FOIC.
In November of 1993, the Board of Representatives changed the CT Page 1323-ZZZ ordinance governing the conduct of hearings by the Board of Ethics by issuing Board of Ethics Hearing Procedures, which require audiotaping of its hearings, and permit a party to employ a court reporter to transcribe the proceedings. The ordinance was also amended at that time to require the board to find violations of the Code of Ethics only upon proof of "clear and convincing" evidence, rather than the previous standard of preponderance of the evidence.
The defendant reconvened on July 28, 1994, almost two years after the September 22, 1992 hearing declared invalid by the FOIC, and the circumstances of that meeting were somewhat bizarre. Notice of the meeting was given to the Town Clerk on the day prior to the hearing. The plaintiff, who had a residence in Vermont, received notice of this hearing the afternoon of the 28th at the local post office in Vermont. His counsel had received notice of the hearing only three days before and could not attend because he was commencing a complicated environmental case in the Superior Court, and his request for a continuance was denied. This attorney did, however, hire a certified court stenographer, Francine Garb, who later testified convincingly in this court that she appeared at the legislative chambers at the Government Center, the scheduled site of the hearing, and found it in darkness. She then looked on other floors of the municipal building with no success. The reporter returned to the front desk on the ground floor and could not find any notice of the meeting and was advised by a security person that there was no such meeting.
After spending almost thirty minutes in a fruitless search for the meeting, she happened to see an acquaintance who advised her that the defendant board was in session in the legislative chambers. When Ms. Garb returned to the room that she had previously looked into and had found to be dark and apparently empty, she noticed the three members of the defendant Board sitting up in the front of the room, and the lights at that point were turned on in the room's public area. No one else was present in the legislative chambers, except for another member of the board who sat at a desk in front of the three members of the board, and did not participate in the proceedings. The court reporter, who was well known to the members of the defendant board, was greeted by these members in an unfriendly, even hostile fashion, and was told that there was no need to transcribe the proceedings because the members of the board were just "discoursing."[9] After a motion had been made and CT Page 1323-AAAA approved to find that the plaintiff had committed the ethical violations in question, Ms. Garb was given a verbal and cursory summary of the meeting, which she transcribed, by one of the members. At this meeting, the defendant reiterated its earlier decision of September 22, 1992, which had been declared invalid by the FOIC, that the plaintiff had violated the municipality's Code of Ethics.
The defendant's chairman testified in this court that the meeting of July 28, 1994 was not audiotaped, as required by the revised proceedings for hearings, because it was not a "hearing" but rather just a "meeting," a distinction that is not found in the Ordinance 640 Supplemental, or in the revised regulations for the conduct of hearings. Moreover, the defendant thwarted Ms. Garb's efforts to transcribe the meeting, except for the purported summary provided her at the close of the proceedings. Finally, the decision of the defendant that the plaintiff violated the Code of Ethics does not state that it is based on "clear and convincing" evidence. The chairman of the defendant testified before this court that this was the standard the members had in mind when rendering their decision, but this testimony was not convincing. (See, by way of contrast, Weiss v. Statewide Grievance Committee,227 Conn. 802, 825, 633 A.2d 282 (1993), wherein the statewide grievance committee made a written report "that it had been apprised of the new standard of proof and accordingly had applied the clear and convincing evidence standard . . . when . . . it reconsidered [the] case").
Because the defendant gave inadequate notice of its July 28, 1994, and violated its own rules regarding audiotaping and transcribing, the plaintiff was deprived of due process of law as required by section 1a of the 1993 revision to the defendant's rules for holding hearings, which provided that "[t]he hearing shall be conducted in a manner consistent with due process and fairness." "For more than a century, the central meaning of procedural due process has been clear. `Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." Roundhouse Construction Corporation v. Telesco MasonsSupplies Co., 168 Conn. 371, 377, 362 A.2d 778, vacated, 423 U.S. 809,96 S.Ct. 20, 46 L.Ed.2d 29 (1975), on remand, 170 Conn. 155,365 A.2d 393, cert. denied, 429 U.S. 889, 97 S.Ct. 246,50 L.Ed.2d 172 (1976); Harkless v. Rowe, 232 Conn. 599, 657 A.2d 562
CT Page 1323-BBBB (1995).
Counts two, three and four of the complaint are moot because the FOIC already ruled that the meetings in which the defendant decided to pursue the investigation and to find the plaintiff guilty of ethical violations were illegal and that the board's rulings were null and void. As to the fifth count, a declaratory judgment hereby enters that the meeting of July 28, 1994, finding the plaintiff had violated the Code of Ethics, was illegal, and that the defendant board's ruling to that effect is therefore null and void.[10]
So Ordered.
Dated at Stamford, Connecticut, this 15th day of February, 1996.
William B. Lewis, Judge