## SANDRA SALMON *v.* DEPARTMENT OF PUBLIC HEALTH AND ADDICTION SERVICES
## (AC 18253)

O'Connell, C. J., and Foti and Schaller, Js.[1]

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 10, 1999—officially released July 11, 2000

*Donna Decker Morris*, with whom, on the brief, was *David A. Reif*, for the appellant-appellee (plaintiff).

*Edward F. Osswalt*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee-appellant (defendant).

### Opinion

FOTI, J. In this administrative appeal involving alleged patient abuse in a nursing care facility, the plaintiff, Sandra Salmon, appeals from the judgment of the trial court sustaining in part her appeal from the deci-

sion of the defendant, the department of public health and addiction services (department).[2] The department cross appeals from the judgment sustaining the plaintiff's appeal and remanding the case to the department for further fact-finding. On appeal, the plaintiff claims that the court improperly (1) concluded that the department had jurisdiction to hear the complaint, (2) concluded that her due process rights were not violated, (3) concluded that the department relied on credible testimony, (4) interpreted General Statutes § 20-102cc (a)[3] as not requiring an element of intent and (5) abused its discretion in denying her motion to present additional evidence. In addition, the plaintiff and the department claim that the court improperly remanded the

[2] On July 1, 1995, the department of public health and addiction services became known as the department of public health. Public Acts 1995, No. 95-257, §§ 12, 21, 58; *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 3 n.3, 698 A.2d 795 (1997).

Although the court disagreed with several of the plaintiff's claims, it nevertheless sustained her appeal and remanded the case to the department for further fact-finding. Notwithstanding that the remand requires further findings of fact, the court's judgment is a final judgment under General Statutes § 4-183 (j) of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., which provides in relevant part that "[f]or purposes of this section, a remand is a final judgment."

[3] Public Acts 1993, No. 93-121, § 4, which went into effect on June 14, 1993, provides: "The department of health services shall receive, investigate, and prosecute complaints against individuals who are providing or have provided services as a nurse's aide in a chronic and convalescent nursing home or rest home with nursing supervision. The grounds for complaint shall include resident abuse, resident neglect, misappropriation of resident property, and fraud or deceit in obtaining or attempting to obtain a registration as a nurse's aide. The commissioner shall render a finding on such complaint, after a hearing conducted pursuant to chapter 54 of the general statutes. The commissioner shall have the authority to render a finding and enter such finding on the registry against an individual who is providing or has provided services as a nurse's aide in a chronic and convalescent nursing home or rest home with nursing supervision, without regard to whether such individual is on the registry or has obtained registration as a nurse's aide from the department of health services."

Section 4 of Public Act 93-121 subsequently was codified as General Statutes § 20-102cc (a). References in this opinion to § 20-102cc (a) are to § 4 of Public Act 93-121, which was in effect at the time of the alleged abuse.

case to the department. We disagree with both parties and affirm the judgment of the trial court.

The following facts found by the department's hearing officer are necessary to the resolution of this appeal. In August, 1993, the plaintiff was employed as a registered nurse's aide[4] at Shelton Lakes Residence and Health Care Center (Shelton Lakes) in Shelton. On August 18, 1993, Shelton Lakes terminated the plaintiff's employment on the basis of allegations of patient abuse and reported the accusations to the department. On April 27, 1994, the department brought formal charges against the plaintiff, alleging that she had violated 42 U.S.C. § 1395i-3 (c) (1) (A) (ii) and 42 U.S.C. § 1395i-3 (g) (1) (C) (Sup. V 1993) in that she had abused Vivian Tschauder, a nursing home resident, "by using vulgar and inappropriate language and intimidating the resident [while] rendering incontinent care" to her.

The department notified the plaintiff by letter (dismissal letter) dated May 9, 1994, that the charges against her had been dismissed for insufficient evidence. On May 16, 1994, Mary C. Crowley, a Shelton Lakes administrator, wrote a letter to Donna Buntaine Brewer, chief

[4] Public Acts 1993, No. 93-121, § 2, which went into effect on June 14, 1993, provides in relevant part: "As used in this act . . . (2) 'nurse's aide' means an individual providing nursing or nursing-related services to residents in a chronic and convalescent nursing home or rest home with nursing supervision, but does not include an individual who is a health professional otherwise licensed or certified by the department of health services, or who volunteers to provide such services without monetary compensation; (3) 'registration' means a document issued by the department of health services to a nurse's aide which certifies that such aide has satisfied the training and competency evaluation requirements prescribed by the commissioner and has been found qualified for employment in a chronic and convalescent nursing home or rest home with nursing supervision; and (4) 'registered nurse's aide' means an individual who has been issued a registration as defined in this section."

Section 2 of Public Act 93-121 subsequently was codified as General Statutes § 20-102aa. References in this opinion to § 20-102aa are to § 2 of Public Act 93-121, which was in effect at the time of the alleged abuse.

hearing officer at the department, stating, inter alia, that it was Crowley's understanding "from our telephone conversation today, that at no time was the complaining resident interviewed by your department and, therefore, you are reopening the case as of today." On May 20, 1994, the department notified the plaintiff that it had sent the dismissal letter in error.

On August 16, 1994, the department served the plaintiff with notice of the hearing and the statement of the charges, which the plaintiff, through her attorney, answered on September 4, 1994. A hearing before a department hearing officer was held on December 16, 1994. At the hearing, Tschauder testified, "I was all naked there, and she's wiping me and she said, 'That's pussy.' She kept wiping me, wiping me, saying, 'Pussy, pussy, pussy,' all the time I'm—away from it all. I couldn't." Tschauder testified that she was not afraid of the plaintiff after that incident, but that the plaintiff had frightened her that night.

In her defense, the plaintiff denied ever physically or verbally abusing Tschauder. The plaintiff testified that on the night before Tschauder made the accusation, the plaintiff had a dispute over an unrelated bath incident with coworker Diane Thorpe, the nurse's aide who reported the Tschauder allegation to the head nurse. The plaintiff further testified that Thorpe allegedly told her that night that she would "get" the plaintiff.[5] The plaintiff also called Crowley and the Shelton Lakes director of nursing, Mary Frances Wolf, to testify. Crowley gave testimony regarding her investigation of the alleged incident with Tschauder and the termination of the plaintiff's employment. Wolf testified regarding Tschauder's physical condition and mental state.

On January 20, 1995, the hearing officer issued a proposed final decision in which he determined that

---

[5] In addition, the plaintiff testified that Thorpe received a written warning resulting from the bath incident.

Tschauder's testimony was more credible than the plaintiff's and that Tschauder "had nothing to gain by fabricating a story, as [the plaintiff's] attorney suggested she was doing. She was consistent in the main points of her testimony on both direct and cross-examinations. She not only told Diane Thorpe, but also Mary Crowley and Mary Frances Wolf what had happened."

On February 15, 1995, the commissioner of public health and addiction services (commissioner) adopted the proposed decision as the final decision in the case. In that decision, the commissioner found that the plaintiff had abused the patient through intimidation, and by using vulgar and inappropriate language. The commissioner, however, sent a letter to the plaintiff's attorney notifying him that the February 15, 1995 final decision had been sent in error because the department had not been notified that the plaintiff had timely requested an opportunity to file exceptions to the proposed final decision of January 20, 1995, and to present oral argument prior to the February 15, 1995 final decision. After both parties filed briefs and oral argument was heard on March 24, 1995, another final decision was issued on April 25, 1995. That decision adopted and incorporated the January 20, 1995 proposed final decision in which the hearing officer determined that patient abuse had occurred solely on the basis of the use of vulgar and inappropriate language. Furthermore, the commissioner's decision stated that "a finding of resident abuse [shall] be listed on the Connecticut Nurse Aide Registry [registry], and that this final decision [shall] be filed in the registry."

The plaintiff thereafter appealed from the department's decision to the Superior Court pursuant to General Statutes § 4-183 of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., claiming that the department (1) lacked jurisdiction to hear the complaint, (2) violated her due process rights,

(3) relied on testimony that lacked credibility and (4) exceeded its statutory authority by finding that vulgar and inappropriate language constituted abuse. The court sustained the plaintiff's appeal on the sole ground that the plaintiff's substantial rights were prejudiced by the department's determination of resident abuse without the requisite finding that the plaintiff's use of vulgar and inappropriate language had an adverse affect on the patient. The court remanded the case to the department for further proceedings on the existing record to state its findings as to whether the language at issue had an adverse impact on Tschauder. From that judgment, the present appeal and cross appeal ensued.

I

The plaintiff first claims that the court improperly concluded that the department had jurisdiction to proceed against her on the alleged violations of federal law.[6] We disagree.

"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . It is a familiar principle that a court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise

---

[6] On appeal to the trial court, the plaintiff also argued that the dismissal letter of May 9, 1994, was a final decision that could not be "reopened" because the department failed to follow the procedures of General Statutes §§ 4-182 (c), 20-102cc (a) and 4-181a (b). The plaintiff contended that the matter was a "contested case" and, therefore, the department's procedural errors deprived it of jurisdiction. The court, however, concluded that since the case had not yet reached the hearing stage and the department still was in the investigatory phase of the case when it sent the dismissal letter, the matter had not risen to the level of a contested case. On appeal to this court, the plaintiff contends that the trial court improperly dismissed her argument. We find no merit to this claim.

circumstances and in the manner particularly prescribed by the enabling legislation. . . .

"This concept, however, is not limited to courts. Administrative agencies [such as the department] are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves. . . . We have recognized that [i]t is clear that an administrative body must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. . . . It cannot modify, abridge or otherwise change the statutory provisions, under which it acquires authority unless the statutes expressly grant it that power. . . .

"[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case. . . . Subject matter jurisdiction, unlike jurisdiction of the person, cannot be created through consent or waiver." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4–5, 675 A.2d 845 (1996). "We . . . note that, because [a] determination regarding . . . subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410, 722 A.2d 271 (1999).

The plaintiff first claims that the department attempted to grant itself jurisdiction to prosecute her for alleged violations of federal law since the statement of charges[7] against her alleged only violations of federal law. The plaintiff argues that neither § 20-102cc (a) nor

---

[7] The statement of charges included the following: "Pursuant to the provisions of General Statutes of Connecticut, § 19a-9, 19a-14, and 42 U.S.C. § 1395i-3 (g) (1) (C) (Sup. V 1993), the Department of Public Health and Addiction Services brings the following charges against" the plaintiff.

any of the state statutes and regulations cited in the statement of charges provided the department with authorization to prosecute alleged violations of federal law. Furthermore, the plaintiff argues that although the department theoretically could have relied on § 20-102cc (a), it committed itself to seeking enforcement of only federal law and therefore is now precluded from asserting § 20-102cc (a) to supply jurisdiction. We are not persuaded.

The statement of charges that the department issued against the plaintiff expressly stated that the department was acting pursuant to General Statutes §§ "19a-9, 19a-14, and 42 U.S.C. § 1395i-3 (g) (1) (C) (Sup. V 1993)." The provisions of General Statutes (Rev. to 1993) § 19a-14 (c), as amended by Public Acts 93-121, § 1,[8] incorporate by reference the provisions of chapter 378a of our General Statutes, §§ 20-102aa through 20-102ff.[9] Although the plaintiff is correct in pointing out that the department cited to 42 U.S.C. § 1395i-3 (g) (1) (C) (Sup. V 1993),[10] that reference did not destroy the

---

[8] General Statutes (Rev. to 1993) § 19a-14 (c), as amended by Public Acts 93-121, § 1, provides in relevant part: "No board shall exist for the following professions which are licensed or otherwise regulated by the department of health services . . . (12) Registered nurse's aide . . . . The department shall assume all powers and duties normally vested with a board in administering regulatory jurisdiction over said professions. The uniform provisions of this chapter and chapters 368v, 369 to 381, inclusive, 383 to 388, inclusive, 393a, 395, 398 and 399, including but not limited to standards for entry and renewal; grounds for professional discipline; receiving and processing complaints; and disciplinary sanctions, shall apply, except as otherwise provided by law, to the professions listed in this subsection."

[9] Public Acts 1993, No. 93-121, § 7, which went into effect on June 14, 1993, provides: "Nothing in this act shall authorize any person to engage in any activity for which a license is required pursuant to chapter 378 of the general statutes."

Subsection 7 of Public Acts 93-121 subsequently was codified as General Statutes § 20-102ff. References in this opinion to § 20-102ff are to subsection 7 of Public Act 93-121, which was in effect at the time of the alleged abuse.

[10] Section 1395i-3 (g) (1) (C) of title 42 of the United States Code provides: "The State shall provide, through the agency responsible for surveys and certification of nursing facilities under this subsection, for a process for the receipt and timely review and investigation of allegations of neglect and

jurisdiction of the department over this case. In actuality, that provision sets forth the states' responsibility for assuring quality of care at skilled nursing facilities, including the investigation of allegations of resident neglect and abuse.

In addition, the plaintiff relies on *Castro* v. *Viera*, 207 Conn. 420, 541 A.2d 1216 (1988), and *Stern* v. *Medical Examining Board*, 208 Conn. 492, 545 A.2d 1080 (1988), for the proposition that the legislature did not grant the department authority to prosecute violations of federal law. Although those cases analyzed whether an administrative agency lacked subject matter jurisdiction, both are factually distinguishable. In *Castro*, our Supreme Court held that the existence of an employee-employer relationship is a jurisdictional fact that must be shown before the workers' compensation commission can proceed with a claim for workers' compensation benefits pursuant to General Statutes § 31-297. *Castro* v. *Viera*, supra, 427–35. Likewise, in *Stern*, our Supreme Court stated, "In the administrative context, a proper claim for relief serves the equally vital function of establishing the jurisdictional authority of the tribunal. . . . Just recently, we held that the existence of an employee-employer relationship is a jurisdictional fact that must be shown in order to proceed with a claim for workers'

abuse and misappropriation of resident property by a nurse aide of a resident in a nursing facility or by another individual used by the facility in providing services to such a resident. The State shall, after notice to the individual involved and a reasonable opportunity for a hearing for the individual to rebut allegations, make a finding as to the accuracy of the allegations. If the State finds that a nurse aide has neglected or abused a resident or misappropriated resident property in a facility, the State shall notify the nurse aide and the registry of such finding. If the State finds that any other individual used by the facility has neglected or abused a resident or misappropriated resident property in a facility, the State shall notify the appropriate licensure authority. A State shall not make a finding that an individual has neglected a resident if the individual demonstrates that such neglect was caused by factors beyond the control of the individual." 42 U.S.C. § 1395i-3 (g) (1) (C) (Sup. V 1993).

compensation benefits. [Id.], 427–35. Similarly, the death of a decedent is a jurisdictional prerequisite to the administration of an estate in probate proceedings. *Ruick* v. *Twarkins*, 171 Conn. 149, 153, 367 A.2d 1380 (1976). These cases stand for the principle that certain jurisdictional facts are essential to establish the statutory jurisdiction of tribunals of limited authority. The existence of these facts is fundamental to the power to entertain and adjudicate a proceeding on the merits. In short, such facts condition the power to act. *Castro* v. *Viera*, supra, 434." (Citation omitted; internal quotation marks omitted.) *Stern* v. *Medical Examining Board*, supra, 501–502.[11]

Unlike the situations in *Castro* and *Stern*, there is no missing jurisdictional fact in this case that would subvert the department's jurisdiction. There is no question that the plaintiff was a registered nurse's aide subject to the authority of the department at the time the statement of charges and notice of hearing were issued. Section 20-102cc (a) clearly gave the department jurisdiction in the present matter. The plaintiff mischaracterizes the statement of charges to indicate that the department was acting under federal law. We agree

---

[11] In particular in *Stern*, our Supreme Court noted that "[t]he critical jurisdictional fact in the present case was the licensure status of the plaintiff at the commencement of the proceedings. The authority of the [medical examining] board is contingent upon a showing that a respondent is a 'physician' subject to its disciplinary power. General Statutes § 20-13c. According to § 20-13a (5), a 'physician' is any 'person licensed pursuant to [chapter 370].' In its statement of charges, the department [of health services] did not specify any intention to pursue its options under § 19a-17 for a censure, letter of reprimand or civil penalty. Nor did the department include in its prayer for relief a general request for any administrative action that, in the board's discretion, might be appropriate in this case. Having committed itself to seeking only a license revocation, the department disabled itself from invoking other sanctions theoretically authorized by § 19a-17 as a basis for board jurisdiction. In short, we conclude that the narrowly drawn prayer for relief rendered the case subject to dismissal for lack of jurisdiction." *Stern* v. *Medical Examining Board*, supra, 208 Conn. 502.

with the trial court, however, that the department incorporated by reference § 20-102cc (a) and, therefore, had jurisdiction under a valid state statute.

Finally, we disagree with the plaintiff that although the department theoretically could have relied on § 20-102cc (a), it committed itself to seeking enforcement only of federal law and is now, therefore, precluded from asserting § 20-102cc (a) to supply jurisdiction. As stated previously, because the department incorporated by reference § 20-102cc (a) in its original statement of charges, we conclude that the department was acting strictly within its statutory authority, within constitutional limitations and in a lawful manner.

## II

The plaintiff next claims that the department's failure to promulgate regulations defining abuse by nurse's aides resulted in ad hoc decision making that violated her state and federal constitutional rights to due process. Furthermore, the plaintiff argues that the department's reliance on three of its unpublished decisions to find that verbal abuse constituted "resident abuse" was invalid rule making. Essentially, the plaintiff contends that (1) her procedural due process rights were violated and (2) that the term "resident abuse" in § 20-102cc (a) is too vague to give notice of what type of conduct constitutes abuse. We disagree.

## A

"The fourteenth amendment to the United States constitution prohibits any state from depriving any person of 'life, liberty, or property, without due process of law.' Article one, section eight of our state constitution contains the same prohibition and is given the same effect as the fourteenth amendment to the federal constitution. *Miller* v. *Heffernan*, 173 Conn. 506, 516, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S.

Ct. 1226, 55 L. Ed. 2d 758 (1978)." *Lee* v. *Board of Education*, 181 Conn. 69, 71–72, 434 A.2d 333 (1980), on appeal after remand sub nom. *Halpern* v. *Board of Education*, 231 Conn. 308, 649 A.2d 534 (1994). Our analysis of the plaintiff's claim therefore encompasses both of these provisions, as well as the provisions of the UAPA. "[T]his court has held repeatedly that the procedures required by the UAPA exceed the minimal procedural safeguards mandated by the due process clause." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 356–57, 542 A.2d 672 (1988).

"Administrative due process requires, in its essence, that a party be given notice of the case against him and an opportunity to be heard by a fair and impartial body. The procedure must be tailored, in light of the decision to be made, to the circumstances of those who are to be heard to insure that the hearing is, in fact, meaningful. *Mathews* v. *Eldridge*, 424 U.S. 319, 349, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Pagano* v. *Board of Education*, 4 Conn. App. 1, 6–7, 492 A.2d 197 (1985)." *Altholtz* v. *Dental Commission*, 4 Conn. App. 307, 313, 493 A.2d 917 (1985). "The 'root requirement' of the due process clause is that the state actor afford individuals notice and an opportunity for a hearing before depriving them of their property interests." *Connecticut Education Assn., Inc.* v. *Tirozzi*, 210 Conn. 286, 298, 554 A.2d 1065 (1989), citing *Cleveland Board of Education* v. *Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

The record discloses that the board scrupulously adhered to the requirements of the statute, including notice and a full hearing. Accordingly, the court properly concluded that the procedure used in this case protected the plaintiff's constitutional due process rights.

## B

The plaintiff argues that the term "resident abuse" as it appears in § 20-102cc (a) fails to inform her of the type of conduct that could result in the commissioner entering a finding in the nurse aide registry. The crux of the plaintiff's argument is that the department's failure to adopt regulations defining and interpreting resident abuse, accompanied by its reliance on several unpublished decisions, resulted in a violation of her due process rights because she could not know that her alleged actions constituted resident abuse within the meaning of § 20-102cc (a).[12] We disagree.

"The terms of a statute which is penal in nature; see *Brazo* v. *Real Estate Commission,* 177 Conn. 515, 526, 418 A.2d 883 (1979); 'must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.' *Amsel* v. *Brooks,* 141 Conn. 288, 297, 106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S. Ct. 125, 99 L. Ed. 693 (1954). In applying this test, we look at the statute's applicability to the particular facts at issue. *State* v. *Smith,* 183 Conn. 17, 19, 438 A.2d 1165 (1981). Generally, if a practical or sensible effect may be given to such a statute, it will be sustained. *Amsel* v. *Brooks,* supra [297]." *Altholtz* v. *Dental Commission,* supra, 4 Conn. App. 314. "A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity." (Internal quotation marks omitted.) *Sweetman* v. *State*

---

[12] The plaintiff claims that the department was entitled to adopt regulations pursuant to Public Acts 1993, No. 93-121, § 6, which went into effect on June 14, 1993, and provides: "The commissioner of health services shall adopt regulations, in accordance with the provisions of chapter 54 of the general statutes, concerning the regulation of nurse's aides."

Subsection 6 of Public Acts 93-121 subsequently was codified as General Statutes § 20-102ee. References in this opinion to § 20-102ee are to subsection 6 of Public Act 93-121, which was in effect at the time of the alleged abuse.

*Elections Enforcement Commission,* 249 Conn. 296, 322, 732 A.2d 144 (1999). To demonstrate that § 20-102cc (a) is unconstitutionally vague as applied to her, the plaintiff therefore "must . . . demonstrate beyond a reasonable doubt that [she] had inadequate notice of what was prohibited or that [she] was the victim of arbitrary and discriminatory enforcement." *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 591, 590 A.2d 447 (1991).

"Because perfect precision is neither possible nor required . . . the [vagueness] doctrine does not mandate the invalidation of all imprecisely drafted statutes. . . . While some ambiguous statutes are the result of poor draftsmanship, it is apparent that in many instances the uncertainty is merely attributable to a desire not to nullify the purpose of the legislation by the use of specific terms which would afford loopholes through which many could escape." (Citations omitted; internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission,* supra, 249 Conn. 322.

Our Supreme Court has noted that "[c]ivil statutes must be definite in their meaning and application, but may survive a vagueness challenge by a lesser degree of specificity than in criminal statutes. . . . Due process requires that a statute afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." (Citations omitted; internal quotation marks omitted.) *Keogh* v. *Bridgeport,* 187 Conn. 53, 60, 444 A.2d 225 (1982).

In the present case, the language of § 20-102cc (a) is sufficiently explicit to inform registered nurse's aides what conduct on their part will render them subject to its penalties. Public Acts 1993, No. 93-121, § 4, which went into effect on June 14, 1993, and subsequently was codified as § 20-102cc (a), provides in relevant part

that "[t]he department of health services shall receive, investigate, and prosecute complaints against individuals who are providing or have provided services as a nurse's aide in a chronic and convalescent nursing home or rest home with nursing supervision. The grounds for complaint shall include resident abuse, resident neglect, misappropriation of resident property, and fraud or deceit in obtaining or attempting to obtain a registration as a nurse's aide. . . ." Furthermore, § 20-102cc (a) provides that "[t]he commissioner shall have the authority to render a finding and enter such finding on the registry against" a nurse's aide.

"Terms associated with the trade or business with which a given statute is concerned should be accorded the meaning which they would convey to an informed person in that trade or business. *Berger, Lehman Associates, Inc.* v. *State*, 178 Conn. 352, 357, 422 A.2d 268 (1979). We presume that members of [the department of public health] are competent to decide on the basis of such terms whether certain conduct is in derogation of professional standards. See *Jaffe* v. *State Department of Health*, 135 Conn. 339, 349, 64 A.2d 330 (1949)." *Altholtz* v. *Dental Commission*, supra, 4 Conn. App. 314. It is our view that what constitutes "resident abuse" and what findings should be placed on the registry to support such abuse are to be determined "by those standards which are commonly accepted by those practicing the same profession in the same territory." (Internal quotation marks omitted.) *Leib* v. *Board of Examiners for Nursing*, 177 Conn. 78, 88–89, 411 A.2d 42 (1979), quoting *Cherry* v. *Board of Regents*, 289 N.Y. 148, 158, 44 N.E.2d 405 (1942). "These standards are part of the ethics of the profession, and every member of the profession should be regarded as an expert with regard to the determination of their meaning. *Leib* v. *Board of Examiners for Nursing*, supra, 89." *Altholtz* v. *Dental Commission*, supra, 315. The plaintiff has

failed to demonstrate beyond a reasonable doubt that she had inadequate notice of what was prohibited. This court is therefore of the opinion that the ordinary meaning of the phrase "resident abuse" afforded the plaintiff, a person of ordinary intelligence, a reasonable opportunity to know that it encompassed all types of abuse, including verbal abuse.

To decide whether the plaintiff was the victim of arbitrary and discriminatory enforcement, we must turn to the legislative history of §§ 20-102cc (a) and 20-102ee.[13] Our Supreme Court has stated that "we may add interpretive gloss to a challenged statute in order to render it constitutional. . . . In construing the statute, however, we must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. . . .

"Our analysis of the core meaning, or lack thereof, of the phrase [resident abuse] is guided, therefore, by well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *Packer* v. *Board of Education*, 246 Conn. 89, 115, 717 A.2d 117 (1998).

The legislative history in the present case lends support to our conclusion that the department, not the legislature, should determine and apply the professional standards in the nursing aide profession in determining if a registered nurse's aide committed an infraction.

---

[13] See footnote 12.

The legislative history surrounding §§ 20-102cc (a) and 20-102ee indicates that the legislature contemplated having mandatory regulations requiring the department to specifically delineate, inter alia, what constitutes resident abuse.[14] Instead, the legislature, by enacting Public Acts 1993, No. 93-121, drafted legislation that not only allowed the department to promulgate regulations if it deemed them necessary, but also vested it with the authority to determine abuse on a case-by-case basis.

Because we conclude that the legislature vested the department with the authority to determine cases on a case-by-case basis, we conclude that the plaintiff was not the victim of arbitrary and discriminatory enforcement. For this reason, we disagree with the plaintiff's

[14] Among others, Stanley K. Peck, the director of the division of medical quality assurance in the department of health services, testified regarding Public Acts 1993, No. 93-121. In an exchange between Representative Lenny T. Winkler and Peck, Winkler questioned Peck on why it was not mandatory for the department to promulgate regulations.

"[Stanley K. Peck]: Well, we didn't make it shall because we didn't—we don't anticipate anything specific at this point in time that we really need to address in regulations, but by providing the authority to do it down the road, you know, we would—in the event, for example, federal mandates may change, then we'd have the authority. We wouldn't have to come back to the legislature, but right now there isn't anything that we are aware of above and beyond that we need to put into the law in order to make it work. So we've just left it open-ended for the future.

"[Representative Winkler]: But yet if somebody is supposed to adhere to a certain set of rules, shouldn't they be spelled out so they know what they are—?

"[Peck]: Well, the rules—the standard that people are supposed to adhere to is spelled out in the federal law and reiterated here in the state law, and that is that in terms of this statute, we can take action for abuse, neglect, theft of patient property or presentation of fraudulent credentials in the course of getting on the registry.

"Those things are consistent with what the grounds are that are set forth in the federal law and we're not going any further than that, and *what constitutes abuse or neglect in any given situation is really a matter that's decided on a case-by-case basis and given definition by the hearing officer who is charged with hearing the case and adjudicating it.*" (Emphasis added.) Conn. Joint Standing Committee Hearings, Public Health, Pt. 5, 1993 Sess., pp. 1710–11.

contention that the department improperly relied on three of its unpublished decisions in determining that the plaintiff committed resident abuse. The department's reliance on those decisions did not amount to what the plaintiff claims to be invalid rule making. Rather, the department made a fact-specific determination that strictly adhered to all procedural regulations and guidelines set up by our legislature.

## III

The plaintiff next claims that the court improperly concluded that the department relied on credible testimony.[15] The plaintiff contends that the testimony of the victim, Tschauder, was unreliable because evidence was introduced indicating that she suffered from a series of medical conditions. In addition, the plaintiff claims that the court improperly applied the correct standard of review, the substantial evidence standard, in upholding the department's decision on this issue. We are not persuaded.

"We begin our analysis by noting that our review of an agency's factual determination is constrained by the [UAPA]. Specifically, General Statutes § 4-183 (j) (5) mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . . We have interpreted the standard of review set forth in the act as limiting our review

---

[15] The plaintiff also contends that the hearing officer should not have considered the victim's testimony without first requiring medical evidence of her competency and that the hearing officer's failure to do so was an abuse of discretion. We find no merit to this claim.

such that [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 219 Conn. 51, 57, 591 A.2d 1231 (1991); see *DiBlasi* v. *Zoning Board of Appeals*, 224 Conn. 823, 829–30, 624 A.2d 372 (1993). An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744, 626 A.2d 705 (1993); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, supra, 57. Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. *Connecticut Building Wrecking Co.* v. *Carothers*, [supra, 218 Conn. 601]; *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, supra, 57. This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 640, 583 A.2d 906 (1990)." (Internal quotation marks omitted.) *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 246 Conn. 18, 35–36, 716 A.2d 78 (1998). "The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him." (Internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 47 Conn. App. 466, 470, 704 A.2d 827 (1998).

The plaintiff has failed to point to anything in the record from which we can conclude that Tschauder's

testimony was not credible. The hearing officer made numerous findings concerning Tschauder's testimony. Among those findings were that Tschauder was not fabricating her side of the incident, that she had no motive to make trouble for the plaintiff, and that she was consistent with her statements on both direct and cross-examinations. Most importantly, the hearing officer specifically found that Tschauder's testimony was more credible than the plaintiff's. Although the plaintiff introduced evidence that Tschauder suffered from numerous medical ailments, the hearing officer found Tschauder's testimony to be credible. Thus, we conclude that the court properly determined that there was substantial evidence in the record to support the department's conclusion.

In addition, the plaintiff claims that the court improperly applied the substantial evidence standard of review in upholding the department's decision. In addressing the plaintiff's claim that the record lacked substantial evidence to support the department's finding that Tschauder was a credible witness, the court concluded that there was nothing in the record to show that the hearing officer's assessment of her reliability as a witness was clearly erroneous. The court was therefore correct in applying the substantial evidence standard of review to the plaintiff's claim.

IV

In her next claim, the plaintiff contends that the court improperly interpreted § 20-102cc (a) as not requiring an element of intent. We decline to review this claim.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5; *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993) (issue not reviewed because not raised at

trial). This court will review claims not raised at trial only in extraordinary circumstances. See *Williamson* v. *Commissioner of Transportation*, 209 Conn. 310, 317, 551 A.2d 704 (1988). [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. Practice Book § 4185, [now § 60-5] (court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial); *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims neither addressed nor decided by court below are not properly before appellate tribunal). . . . *W.* v. *W.*, 248 Conn. 487, 505–506, 728 A.2d 1076 (1999), quoting *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998)." (Internal quotation marks omitted.) *Torres* v. *Waterbury*, 249 Conn. 110, 133, 733 A.2d 817 (1999).

Our review of the record discloses that the plaintiff failed to raise this issue before the trial court. The court's memorandum of decision is devoid of any reference to this claim. Although the plaintiff argued to the trial court that resident abuse "has to involve an element of specific harm or injury," she did not specifically address the issue of whether § 20-102cc (a) requires the element of intent. We decline, therefore, to review this claim.

V

The plaintiff next claims that the court abused its discretion in denying her motion to present additional evidence pursuant to § 4-183 (h).[16] We disagree.

---

[16] General Statutes § 4-183 (h) provides: "If, before the date set for hearing on the merits of an appeal, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court."

"An appeal from an administrative tribunal should ordinarily be determined upon the record of that tribunal, and only when that record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason requires it, should the court hear evidence. . . . The question whether additional testimony should be taken by the court calls for an exercise of the court's legal discretion." (Citation omitted.) *Tarasovic* v. *Zoning Commission*, 147 Conn. 65, 69–70, 157 A.2d 103 (1959); *Samperi* v. *Planning & Zoning Commission*, 40 Conn. App. 840, 851, 674 A.2d 432 (1996); *Swensson* v. *Planning & Zoning Commission*, 23 Conn. App. 75, 79–80, 579 A.2d 113 (1990). "The scope of review by this court on a claim that the trial court abused its discretion is well settled. [E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Higgins* v. *Karp*, 239 Conn. 802, 808, 687 A.2d 539 (1997).

Before ordering that additional evidence be taken pursuant to § 4-183 (h), a court must (1) determine that the additional evidence is material and (2) that there is good reason for the failure to present the evidence in the original proceeding. In the present case, the plaintiff sought the court's permission to present evidence that Tschauder testified falsely, that the testimony of the witnesses from Shelton Lakes was unreliable, and evidence that Tschauder's medical and mental condition made her testimony unreliable. In her motion to present additional evidence, the plaintiff contended that she had failed to present the evidence at the hearing before the department because it was newly discovered and because of ineffective assistance of counsel.

Although the court found that most of this evidence was material, it concluded that there was no good reason for the plaintiff not to have presented it at the prior hearing. The court found that there was nothing in the plaintiff's motion to show that the evidence could not have been presented to the department at the prior proceeding. Furthermore, the court stated that although the plaintiff "claims that her lawyer is to blame for not presenting this evidence, the court cannot find that as a matter of law ineffective assistance of counsel before an administrative agency constitutes a good reason under General Statutes § 4-183 (h)." On the basis of the record, we are unable to conclude that the court abused its discretion.

## VI

Both the plaintiff and the department claim, for different reasons, that the court improperly remanded the case to the department. The plaintiff argues that the court improperly remanded the case to the department to state its finding whether, on the existing record, the vulgar and inappropriate language used by the plaintiff had some adverse impact on or harmed the victim.[17] The plaintiff contends that because the allegation of intimidation was specifically rejected by the commissioner, the court, as a matter of law, should have concluded that there was no adverse impact and, thus, no resident abuse. The department argues that the court should not have remanded the case to the department on the issue of whether the victim was adversely impacted by the plaintiff's vulgar language. In essence, the department claims the court improperly applied a

---

[17] The plaintiff alternatively argues that the court improperly remanded the case to the department on the existing record. We disagree. Almost seven years have passed since the incident occurred. Because both the plaintiff and the department already have had an opportunity at the previous hearing to present evidence and call witnesses, it is unlikely that any additional relevant evidence could be produced.

subjective test in assessing whether there was an adverse impact on the victim. The department contends that the court should have applied an objective test, and concluded that any reasonable person would be adversely impacted by the words and actions of the plaintiff. We disagree with the claims made by both parties.

"The standard of review of an agency decision is well established. Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . . *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 642–43, 708 A.2d 202 (1998)." (Internal quotation marks omitted.) *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 389, 709 A.2d 1116 (1998). Because our courts have not yet had occasion to construe the language of § 20-102cc (a), our standard of review is plenary.

A

The plaintiff's argument that the use of vulgar and inappropriate language could not have an adverse impact on the victim because the department rejected a finding of intimidation has no merit. The plaintiff

confuses the findings made by the department and the conclusions reached by the court on appeal. Although the court sustained the plaintiff's appeal, it concluded that vulgar and inappropriate language could constitute resident abuse. The court, however, read the term "resident abuse" in § 20-102cc (a) to require some type of adverse impact on the affected patient. Since the department failed to make such a finding, the court remanded the case to the department to state its finding on that issue. Whether the department and the commissioner previously rejected a finding that the plaintiff intimidated the victim is, therefore, irrelevant to the issue of whether the victim suffered some type of harm from the plaintiff's vulgar and inappropriate statements.

B

On its cross appeal, the department argues that the court improperly remanded the case on the issue of whether the victim suffered some "physical, mental or emotional" adverse impact. In essence, the department argues that this type of "subjective test" is improper. In addition, the department contends that there is substantial evidence in the record to support the department's finding of resident abuse. We disagree.

One of the main goals of our legislature in enacting Public Acts 93-121 was to protect the "frail elderly who are receiving services in nursing homes where abusive aides are engaging in some type of inappropriate behavior or misconduct." 36 H.R. Proc., Pt. 9, 1993 Sess., p. 3039, remarks of Representative Joseph D. Courtney. As stated in part II B of this opinion, it was the intent of the legislature that the department should make case-by-case determinations on the issue of whether a nurse's aide has abused a resident patient. It is the opinion of the court that this type of a case-by-case determination should be conducted with the personal and individual sensitivities of the particular patient kept

in mind. The department argues that a subjective test fails to protect patients lacking cognitive abilities because they are unable to recognize that potential abuse is being committed against them. It may be the case, in some situations, that an objective test would be more effective than a subjective test. For example, a factual scenario may be envisioned in which a comatose, unconscious or mentally disabled patient is verbally abused in the same manner as was the victim in this case. In such a situation, an objective test may be more appropriate.[18]

As we have explained, we are not presented with such a situation in this case. Because we believe that in most situations, including the present one, a subjective test would be most effective in determining whether an abused resident suffered some type of "adverse

[18] The dissent argues that an "objective test would better serve all parties in this and other such cases." As we have already acknowledged, an objective test, in some cases, would be more effective. In the present case and in most situations, however, a subjective test is best suited to determine whether a patient has been the victim of resident abuse. Our legislature enacted legislation designed to protect the frail elderly in nursing homes. With that in mind, we cannot ignore the fact that a subjective test is superior to an objective test in ascertaining whether a *competent* resident suffered some type of harm or adverse impact because the subjective test focuses directly on the victim. Justice would not be served if we ignored the legislative intent of § 20-102cc by moving the focus of our analysis away from the victim and establishing a test that is predicated on the assumption that most residents in nursing homes are not competent.

The dissent quotes *Kentucky Board of Nursing* v. *Ward,* 890 S.W.2d 641, 644 (Ky. App. 1994), for the proposition that a nursing home is a place "where the vast majority of patients are infirm due to advance age." We disagree that such a generalization can be the basis for crafting a rule of law. It is true that at some point in time, most of us will experience the effects of the aging process. Those of us who turn to nursing homes to alleviate the burden of this process, however, are not always incompetent. In this very case, the plaintiff gave competent testimony at the hearing regarding the night in question and how she was affected by the plaintiff's conduct. Applying an objective test to the present facts not only diminishes the focus on the specific harm the victim testified she felt, but also creates the insurmountable task of having others, i.e. reasonable people, try to evaluate something only the victim could have felt, self-degradation.

impact," we reject the department's claim that the court improperly remanded the case for additional proceedings. We further conclude that the remand was proper because although there was substantial evidence in the record suggesting that the plaintiff verbally abused the victim, there were insufficient findings as to whether the victim suffered some type of harm or adverse impact as a result.

The judgment is affirmed.

In this opinion O'CONNELL, C. J., concurred.

SCHALLER, J., dissenting. I respectfully disagree with the majority's conclusion on the issue concerning the remand.[1] Both parties claim on appeal that a remand is improper, although for different reasons. As the majority notes, the plaintiff contends that the trial court, applying a subjective test, should have concluded as a matter of law that no adverse impact was established

---

[1] The plaintiff raises numerous troubling issues in her appeal. In particular, the issue of intent or wilfulness, discussed in part IV of the majority opinion, would deserve consideration had it been properly preserved in the trial court proceedings. See *Hearns* v. *District of Columbia Dept. of Consumer & Regulatory Affairs*, 704 A.2d 1181, 1182–83 (D.C. App. 1997) (discussing petitioner's claim that government failed to establish she either wilfully or intentionally abused resident).

Furthermore, although I agree with the majority that the language of Public Acts 1993, No. 93-121, § 4, which went into effect on June 14, 1993, and subsequently was codified as General Statutes § 20-102cc (a), was adequate to inform the plaintiff of the type of conduct that could result in the commissioner of public health making a finding of resident abuse, the plaintiff's argument does not go unheard. The Connecticut legislature gave the commissioner the authority pursuant to Public Acts 1993, No. 93-121, § 6, subsequently codified as General Statutes § 20-102ee, to adopt regulations concerning the regulation of nurse's aides. Other states have specifically adopted measures identifying the behavior that constitutes resident abuse. See, e.g., *Gogebic Medical Care Facility* v. *AFSCME Local 992, AFL-CIO*, 209 Mich. App. 693, 695, 531 N.W.2d 728, appeal denied, 450 Mich. 951, 549 N.W.2d 560 (1995). Because the issue of what constitutes resident abuse is a difficult one, I believe that the commissioner should consider adopting regulations to give nurse's aides, such as the plaintiff, more precise notice of the type of conduct that is inappropriate.

because the department of public health and addiction services (department)[2] rejected the only allegation of harm, namely, intimidation of the patient. The department argues that the court should have applied an objective test to assess whether there was an adverse impact on the victim and that, under that test, the record establishes an adverse impact.

In its memorandum of decision, the trial court determined that an element of whether resident abuse occurred is an explicit finding as to "how or if such language affected the patient." The court stated that its "interpretation of resident abuse under [General Statutes § 20-102cc (a)][3] includes some form of adverse impact, whether physical, mental or emotional, upon the resident. This accords with the policy behind [§ 20-102cc (a)]: To protect the frail and elderly [who] reside in long-term facilities from mental and physical mistreatment by the staff." Neither the plaintiff nor the department takes issue with this determination. After concluding that a specific finding of adverse impact was required, the court ruled that such adverse impact should be determined on the basis of the subjective perceptions and reactions of the resident.

The majority identifies the key issue here as whether a subjective test or an objective test is appropriate to determine whether resident abuse has caused adverse impact on a particular resident. The majority agrees with the trial court's determination that a subjective test is appropriate for this purpose and that a remand is necessary so that the department can engage in further fact-finding on the basis of the existing record on the issue of adverse impact.

---

[2] The department of public health and addiction services is now known as the department of public health. See footnote 2 of the majority opinion.

[3] Public Acts 1993, No. 93-121, § 4, which went into effect on June 14, 1993, subsequently was codified as General Statutes § 20-102cc (a). See footnote 3 of the majority opinion.

This is an issue of first impression, and no Connecticut precedent has been furnished or found to guide us in our determination of whether a subjective test or an objective test should be applied. While I understand the reasons supporting the majority's choice of a subjective test, I respectfully submit that an objective test would better serve all parties in this and other such cases.

The department recites numerous reasons why an objective test is preferable to a subjective test. I believe those reasons are well founded in experience and common wisdom. A subjective test would mean that comatose or unconscious residents, or patients with Alzheimer's disease or other diseases causing loss of cognitive functioning would be unable to express subjective responses to claimed abuse. If a victim had diminished capacity to hear or comprehend particular conduct, no abuse could be established because no harm in the subjective sense could be established. The department argues that "an objective test is required in identifying abusive conduct regardless of the resident's ability to perceive because of the patently deleterious impact such conduct would have on other residents and staff. In other words, unchecked abusive conduct directed at residents who cannot perceive it nevertheless would inevitably result in the creation of a 'hostile environment' within any given nursing facility." Finally, an objective test eliminates the difficulties of proof when the victims have mental deficits or have died before the hearing process is completed. On the other hand, as the Kentucky Court of Appeals pointed out in a similar case, "Many times, the aging process reduces otherwise active, alert, and oriented patients to varying degrees or states of confusion or dementia. It is no secret that many people experience a reversion to childlike behavior in their later years. This is a condition commonly witnessed in a nursing home setting where the vast majority of patients are infirm due to advanced

age. It is also no secret, as undesirable as it may be, that oftentimes a stern tone of voice becomes necessary to get a patient's attention or to impress upon him the need to follow instructions or exercise caution, much the way as is often necessary in dealing with young children." *Kentucky Board of Nursing* v. *Ward*, 890 S.W.2d 641, 644 (Ky. App. 1994). If a subjective test is in place, nurses and nurse's aides would be vulnerable to liability on the basis of claims of adverse impact by complainants whose reactions and responses might well be unduly affected or altered by their particular mental or emotional condition and which might, as a result, be unpredictable or arbitrary, resulting in a disproportionate penalty for the conduct of the caregiver in question.

For these reasons, an objective test for adverse impact would provide greater fairness and consistency for all parties involved in the process, residents and nurse's aides alike. Accordingly, I would adopt the standard of an objective test that is consistent with and in furtherance of the purpose of § 20-102cc (a), that is, whether an alert and rational person in the resident's position, taking into account all the circumstances existing, would have experienced physical harm, pain or mental anguish as a result of the specific conduct of the nurse's aide.

In this case, the parties should have an opportunity to present evidence and argument concerning whether any adverse impact was produced by the conduct of the plaintiff on the basis of the application of an objective test. The department hearing officer should be directed to give full and reasoned consideration to all material facts and issues in determining whether any adverse impact could reasonably be determined to result from the plaintiff's conduct, which consisted of the use on one occasion of vulgar and inappropriate language, under all the circumstances surrounding the

incident. See *Hearns* v. *District of Columbia Dept. of Consumer & Regulatory Affairs,* 704 A.2d 1181 (D.C. App. 1997); *Kentucky Board of Nursing* v. *Ward,* supra, 890 S.W.2d 643 ("[w]hat must be questioned is whether, given *all* the facts . . . reasonable men would have been induced to convict [the nurse] of verbal abuse based on her comment to [the resident], a consideration of all the facts, and application of the pertinent statutes" [emphasis in original]). As one judge has noted, "[T]he issue before us is a difficult one, and . . . too much is at stake here for this court to permit [the plaintiff's] livelihood to be destroyed or impaired without a . . . reasoned application by the agency of the law to the facts." *Hearns* v. *District of Columbia Dept. of Consumer & Regulatory Affairs,* supra, 1186 (Schwelb, J., dissenting).

Accordingly, I respectfully dissent from the majority's conclusion as to the remand to the trial court. I would order the trial court to remand this case to the department for further proceedings consistent with this opinion.