[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiffs, Luis Nunez and J. J. Grocery, from an August 18, 2000, final decision approving a proposed memorandum of decision of June 2, 2000, issued by the Department of Public Health ("the Department"). The decision disqualified the plaintiffs from participation as vendors in the Connecticut Special Supplemental Nutrition Program for Women, Infants and Children ("WIC program") of the Department for a period of three years.
The plaintiffs were licensed vendors under the WIC program. The WIC program is a supplemental food program administered by the Department "in CT Page 5834 accordance with the United States Department of Agriculture regulations,7 C.F.R. § 246.1 through 246.28, as amended." Regs. Conn. State Agencies § 19a-59c-1 (ccc). As vendors, the plaintiffs were authorized by the Department to provide approved food items to WIC participants in exchange for WIC vouchers.
On February 9, 2000, the WIC program office of the Department sent a notice of disqualification to the plaintiffs. The notice set forth alleged violations and advised the plaintiffs that they were disqualified from participating in the WIC program for three years for certain "Class A" violations and for lesser periods for "Class B" and "Class D" violations. The plaintiffs responded to the Department's notice with a request for a hearing. (Return of Record ("ROR"), Volume I, pp. 6-7.)
On June 2, 2000, the proposed memorandum of decision was issued, setting forth the findings of fact that may be summarized as follows:
 1. The plaintiffs are authorized WIC vendors at a grocery store at 64 Madison Avenue, Hartford, Connecticut.
 2. One Denise Maldonado is an investigator with the Center for Research and Public Policy. The Center has a contract with the Department to conduct WIC investigations. Ms. Maldonado has been trained in performing investigations and has performed approximately two hundred investigations in the past two years.
 3. On September 5 and 12, 1999, Maldonado performed compliance purchase investigations at the store.
 4. On September 5, 1999, the individual plaintiff or his cashier allowed cigarettes to be purchased with a WIC check and charged the WIC program for foods not received in exchange for a WIC check when he or his cashier allowed Ms. Maldonado to purchase one pack of Newport cigarettes and three cans of Enfamil/Prosobee 13 oz. concentrate with a WIC check. The WIC program was charged for nine cans of Enfamil/Prosobee 13 oz. concentrate.
 5. In making the September 5, 1999, purchase, Ms. Maldonado used a WIC voucher that authorized her to purchase nine cans of Enfamil/Prosobee 13 oz. concentrate. CT Page 5835
 6. At the time of the September 5, 1999, purchase, the individual plaintiff or his cashier did not (1) check Maldonado's WIC identification card or folder; (2) verify her signature with the WIC identification card, and (3) require that Maldonado enter the purchase price in ink on the WIC check before the check was signed.
 7. On September 5, 1999, the Enfamil formula did not have prices either on the formula itself or on the shelf or door in front of the formula.
 8. On September 12, 1999, the individual plaintiff or his cashier charged the WIC program for foods not received in exchange for a WIC check when Maldonado purchased three cans of Enfamil/Prosobee 13 oz. concentrate.
 9. In making the September 12, 1999, purchase, Maldonado used a WIC voucher that authorized her to purchase eleven cans of Enfamil/Prosobee 13 oz. concentrate.
 10. On September 12, 1999, the individual plaintiff or his cashier did not (1) check Maldonado's WIC identification card or folder; (2) verify her signature with the WIC identification card; and (3) require that Maldonado enter the purchase price in ink on the WIC check at the time of purchase before the check was signed.
 11. On September 12, 1999, the Enfamil formula did not have prices either on the formula itself or on the shelf or door in front of the formula.
 12. There are approximately seven authorized vendors located within one mile from the store.
ROR, Volume I, pp. 7-8.
Based upon these findings of fact, the hearing officer concluded that Maldonado was authorized to conduct the WIC investigation, that Maldonado's evidence of violations was sufficiently probative and that the individual plaintiffs testimony was not credible. With regard to the appropriate penalty, the hearing officer cited to Regs., Conn. State CT Page 5836 Agencies § 19a-59c-6 (c)(2)(A) that provides that "Class [A] violations shall result in an automatic three year disqualification, and further identifies the conduct that is classified as a Class A violation." (ROR, Volume I, p. 11.) The purchase of cigarettes with a WIC check and twice charging the WIC program for foods not received constituted Class A violations "for which the [plaintiffs were] properly assessed three separate three year disqualifications." The less serious violations justified penalties, but as the maximum disqualification is set at three years, these penalties were included in the three year penalty assessed for the class A violations. Id.
The proposed memorandum of decision was approved on August 18, 2000, over objections by the plaintiffs, and this appeal followed. The plaintiffs are aggrieved as they have been disqualified from participating in the WIC program for three years.
The standard of review of this appeal has been set forth in Salmon v.Dept. of Public Health, 58 Conn. App. 642, 660-61, cert. granted on other grounds, 254 Conn. 926 (2000):
 We begin our analysis by noting that our review of an agency's factual determination is constrained by the [UAPA]. Specifically, General Statutes § 4-183(j)(5) mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . We have interpreted the standard of review set forth in the act as limiting our review such that [w]ith regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . This substantial evidence standard is highly deferential.
Further the court's "ultimate duty is to determine, in view of all of the evidence, whether the agency in issuing the order, acted unreasonably, arbitrarily, or in abuse of its discretion." (citation and internal quotation marks omitted). Cadlerock Properties Joint Venture,L.P. v. Commissioner of Environmental Protection, 253 Conn. 661, 676
(2000). CT Page 5837
The plaintiffs' first claim is that the hearing officer erred in discrediting their evidence and in adopting the Department's evidence especially as it related to incident where the WIC check was exchanged for the pack of cigarettes. The court has reviewed the record and under the test stated above, this claim cannot succeed. There is substantial evidence in the record to support the hearing officer's findings of fact for both September 5 and September 12, 1999, that violations of the law occurred. (ROR, Volume I, pp. 94, 98; Volume II, pp. 45, 57, 67-68, 72, 74.) These citations indicate that Maldonado documented each transaction at the grocery store, and the hearing officer was certainly within her authority to rely upon these reports in making her findings. As indicated in Salmon, the trial court may not reject the hearing officer's findings of fact unless a finding is clearly erroneous, and must not substitute its judgment for the hearing officer's on the credibility of witnesses.
The plaintiffs also raise the issue of the legality of the Department's employing a paid tester, Maldonado. This issue was raised in two recent cases, and the court concluded that there was no improper delegation or violation of law in the Department's testing procedure. Keklik D/B/ACaptain's Food Mart v. State of Connecticut Department of Public Health, Superior Court, judicial district of New Britain, Docket No. CV 99 0498295S (April 5, 2001, Wiese, J.) (appeal pending); Pettway D/B/APettway's Variety Store v. State of Connecticut Department of PublicHealth, Superior Court, judicial district of New Britain, Docket No. CV 99 0498296S (April 5, 2001, Wiese, J.). These decisions are directly applicable to the present case, and based upon their holding, the court rejects the plaintiffs contention that the Department's employing of Maldonado violated their rights.
The final issue to be considered is that of the three-year penalty. As indicated above, the WIC program is funded and authorized by federal law, and the states are delegated the responsibility of administering the program in accordance with federal regulations. Therefore there is a federal regulation governing vendor abuse as well as a state regulation. The federal regulation in force in 1999 provided as follows: "The period of disqualification from Program participation shall be a reasonable period of time, not to exceed three years. The maximum period of disqualification shall be imposed only for serious or repeated Program abuse." 7 C.F.R. § 246.12k (ii).
The state regulation, adopted in 1998, § 19a-59c-6 provides in part:
 (c) Vendor Abuse — Sanctions are to be applied by the state WIC program against vendors based on the nature and severity of violations and the Vendor CT Page 5838 authorization agreement. Depending upon the offense, the state WIC program may impose the following:
* * * * * * *
 (2). . . . (A) Class A violations: An automatic three-year disqualification shall be assessed for the following violations:
* * * * * * *
 (ii) allowing cigarettes . . . to be purchased with a WIC check,
* * * * * * *
 (viii) charging the WIC program for foods not received in exchange for a WIC check as determined during compliance purchases or check audits. . . .
A state regulation may not conflict with a federal regulation where the federal law has been developed as a comprehensive program. Barnett BankMarion County N.A. v. Nelson, 517 U.S. 25, 31 (1996) (federal statute took precedence over state regulatory provisions); Liegl v. Webb, 802 F.2d 623
(2d Cir. 1986) (discussing an alleged conflict in state regulation and federal medicaid law); Anna W. v. Bane, 863 F. Sup. 125 (W.D.N Y 1993) (state regulations contravened federal law).
The state regulation in this case does partially conflict with the federal regulation to the extent that it provides for automatic disqualification for Class A violations of the WIC program. The federal statute in effect in 1999 required an exercise of discretion by the hearing officer in setting the penalty. An automatic disqualification is the antithesis of a disqualification that seeks to take into account all the factors that encompassed the violation. The hearing officer in the case before the court specifically imposed the threeyear disqualification as an "automatic . . . disqualification," (ROR, Volume I, p. 11), without any reference to the discretion allowed in the introductory paragraph to state regulation § 19a-59c-6(c).[1]
The Department must reconsider the penalty for the Class A violations taking into account the evidence of record and the "nature and severity of violations."[2] This review will reflect the discretionary language in the 1999 federal regulation and the provisions of the state regulation consistent with the federal law. The appeal is therefore sustained and the case is remanded to the Department to set the appropriate penalty. CT Page 5839
Henry S. Cohn, Judge